### No. 29,105.

SARAH E. DAVIDSON, *Appellee*, v. JEWEL DOUGLASS, *Appellant.*

(284 Pac. 427.)

Opinion filed February 8, 1930.

*Burt Comer* and *Harold H. Malone,* both of Wichita, for the appellant.
*Bert E. Church* and *Ed T. Hackney,* both of Wellington, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action for damages for alienation of affections. The jury answered special questions and returned a gen-

eral verdict for plaintiff. Defendant has appealed, and contends, first, that her demurrer to plaintiff's evidence should have been sustained for the reason that it was not sufficient to establish a cause of action in favor of plaintiff and against defendant.

The facts disclosed by the record and relied upon by plaintiff may be summarized as follows: Plaintiff and her husband, V. H. Davidson, were married in May, 1901. Ten children were born to them, of whom eight are living, and seven of them living at home. They lived in Corbin for many years, where V. H. Davidson worked as a blacksmith in a shop. He also did carpenter work. He made very good wages, provided for his family, and was a good husband and father in every way until his acquaintance and association with the defendant, soon to be mentioned. The defendant and her husband, Ernest Douglass, were married about 1907 and were the parents of two children. They lived on a farm near Corbin, which was their trading point. Defendant did many of the errands and transacted much of the business connected with the operation of the farm.

About 1924 V. H. Davidson was employed to do some carpenter work at the Douglass farm. Defendant's more intimate acquaintance with him began at that time and continued to the trial of this case. Defendant took plowshares or other blacksmith work to the blacksmith shop and would stay and talk with plaintiff's husband, sometimes by the hour. Frequently when she had no blacksmith work to be done, but went to town on some other errand, such as taking milk or cream to the station, she would stop at the blacksmith shop, go in and talk to plaintiff's husband, or call him out to her car, and talk with him sometimes by the hour, even past mealtime, when he had been called to his meals. On these occasions she sometimes took him fruit, such as peaches. She took him riding in her car, sometimes in the daytime and sometimes in the evening. These trips became more frequent. On one occasion a witness found her car parked by the side of the road and she and plaintiff's husband were "just getting up off the ground" in a nearby pasture. They went to picture shows and other places together, frequently in defendant's car, and at times would sit with their arms around each other. She employed him to do little repair work about the farm, perhaps primarily to have him there. He was at defendant's home at times when her husband was away, and he and defendant had some system of signals by tying pieces of cloth to trees near her home.

V. H. Davidson became less steady in his work—wanted to sell oil stock, and things of that kind. Sometime in 1925 he took a job in a garage at Wellington, which kept him away from home during the week, but he was at home with his family at the week ends and used his wages for their support. Defendant saw him frequently while he was working at the garage. Later defendant rented a house, or rooms, at Wellington; in fact, rented four places to live at different times at Wellington. A part of the time V. H. Davidson lived with her and occupied the same bedroom so brazenly that the neighbors could clearly see their conduct. They were both arrested in police court at Wellington for unlawful cohabitation and were fined $25 and costs each, and defendant paid the fine and costs in both cases. When defendant and V. H. Davidson were not together there was quite a correspondence between them. Only a few of the letters were produced at the trial. These disclosed that the parties were infatuated with each other, were desirous of being together, and were looking forward to the time when that could be permanent. At one time defendant sent V. H. Davidson her picture and a lock of her hair, which he showed to his wife and told her how he got them.

In January, 1929, V. H. Davidson filed an action for divorce against the plaintiff, which action is perhaps still pending. A few days later the defendant filed an action for divorce against her husband. The plaintiff in each action was represented by the same attorneys. Defendant procured a divorce from her husband about a month before this case was tried. The fact that defendant was seeking the company of V. H. Davidson, and the conduct and associations of the two, became a public scandal in and about Corbin and throughout much of the county. Within the two or three years while these relations were going on defendant gave V. H. Davidson a number of checks for sums varying from $5 to $40. Some of these were shown to have been given for work done by Davidson about the Douglass place. The reason for giving others is not clearly shown. After about June, 1925, plaintiff's husband was working away from home most of the time, but was at home week ends and at other times, had his washing done at home, cohabited with his wife up until April or May, 1927, and brought or sent his wages home for the support of plaintiff and the family, although the amount of that diminished because of his lack of steady employment. But in April or May, 1927, he told plaintiff that Mrs. Douglass was doing his washing for him and that she need not do it any

more, and he ceased thereafter to provide for his family and to return and live with them. Prior to that plaintiff had talked to her husband about his associations with the defendant and had urged him to cease them. He denied that there was anything wrong between him and the defendant and charged neighborhood gossip and the plaintiff's jealousy. From this recital it is clear from the authorities that there was plenty of evidence to go to the jury, notwithstanding the fact that later a part of it was explained or qualified. (See *Rumor v. Rumor,* 67 Kan. 822, 72 Pac. 1101; *Nevins v. Nevins,* 68 Kan. 410, 75 Pac. 492; *Powers v. Sumbler,* 83 Kan. 1, 110 Pac. 97; *Travis v. Simpson,* 106 Kan. 323, 187 Pac. 684; *Rosenfeld Co. v. Gleed,* 110 Kan. 75, 202 Pac. 611; *Lundstrom v. Nelson,* 114 Kan. 324, 219 Pac. 509.)

Appellant contends that the demurrer to the evidence should have been sustained because it disclosed that the statute of limitations had run, that even if the evidence disclosed that plaintiff had lost the support, affection and consortium of her husband, and even though it tended to show that defendant was responsible therefor, it also showed that this was lost more than two years before the action was brought, which was January 29, 1929. The jury was asked to fix the date, and fixed it as of April 15, 1927, which was less than two years before the action was brought. This finding was justified under the evidence above recited, which it is not necessary to repeat. (*Gooch v. Gooch,* 112 Kan. 592, 211 Pac. 621.)

Appellant complained of the admission of evidence. One item of this is a letter purporting to have been written by defendant to plaintiff's husband and which plaintiff saw. The complaint made here is that there was no competent evidence introduced that the letter was written by defendant. That specific complaint was not made in the trial court, and hence is not available here. The complaint made in the trial court was that the letter itself was not offered, and that a proper foundation was not laid to enable the witness to testify as to its contents. The trial court held that the proper foundation had been laid, and no complaint is now made of that ruling. The next point here raised is that the court admitted in evidence letters written by plaintiff's husband to defendant. These were found in defendant's home by her husband. Appellant argues that they were not in defendant's handwriting. As to that, no one contended they were. They were written by plaintiff's husband to defendant. It is next argued that there was no evidence that de-

fendant ever saw them, but the circumstances under which they were found leave no other reasonable inference than that they were received by defendant. They were competent evidence as tending to show the relation existing between the parties.

Appellant complains of the exclusion of evidence offered on her behalf at the trial. Since the excluded evidence was not brought upon the record by affidavit or otherwise at the motion for a new trial, as required by statute (R. S. 60-3004), the ruling is not available to appellant for review. More than that, the ruling was proper.

Appellant complains of the refusal of the court to give instructions requested. The pertinent portions of all requested instructions were in fact given, and no complaint is made of instructions given. There is therefore no error in this respect.

Appellant complains of the refusal of the court to submit special questions requested. Defendant requested the submission of thirty special questions. Ordinarily a party is not entitled to submit more than ten (R. S. 60-2918), and the court reframed the questions requested and submitted ten special questions, which made fair inquiry of the jury of the controverted issues. There was no abuse of discretion in this, and therefore no ground for reversal.

Appellant contends that the court erred in refusing to grant a new trial for the reason that the verdict was contrary to the evidence. It is the peculiar function of the jury and trial court to weigh the evidence, and from the recital of the evidence heretofore made it is clear that there was ample evidence to support a judgment for plaintiff. Appellant also contends that a new trial should have been granted because of the corruption of the party obtaining it, in that counsel for plaintiff played upon the prejudices of the jury and called to the witness stand plaintiff's children and an unnecessary number of other witnesses. Of course that is not what is meant by a corruption of the prevailing party. (R. S. 60-3001, clause 6th.) If a new trial had to be granted because a party called witnesses in his behalf, all cases would have to be tried over, not only once, but repeatedly. Neither is there anything in the record to disclose that counsel for plaintiff played upon the prejudices of the jury, or at least to no greater extent than the evidence—as they were entitled to view and interpret it—justified. Appellant argues that the verdict of the jury showed passion and prejudice because it was excessive. The verdict was for $20,000. The trial court, familiar with all the facts and circumstances of the case, thought it excessive and re-

quired plaintiff to accept a remittitur to $10,000, or the granting of a new trial. Plaintiff accepted the remittitur, and judgment was entered for $10,000. Appellant argues that this is in effect a determination by the trial court that the jury was influenced in the amount of the verdict by passion and prejudice. But that conclusion does not necessarily follow. (*U. P. Railway Co. v. Mitchell,* 56 Kan. 324, 43 Pac. 244; *Railway Co. v. Frazier,* 66 Kan. 422, 71 Pac. 831; *Railway Co. v. Brandon,* 77 Kan. 612, 95 Pac. 573; *Bothe v. True,* 103 Kan. 562, 175 Pac. 395; *McGuigan v. Jacobson,* 106 Kan. 744, 189 Pac. 962; *Gill v. Smith,* 121 Kan. 18, 245 Pac. 1041.)

The record, as it is presented to us, does not force the conclusion that the original verdict was excessive. The trial court, in much better position to judge the matter than this court is, thought it excessive and required the remittitur, but the fact that the court approved the verdict for $10,000 demonstrates that the court did not regard the amount of the original verdict as having resulted from passion and prejudice on the part of the jury—if he had so regarded it he should have granted a new trial (*Argentine v. Bender,* 71 Kan. 422, 424, 80 Pac. 935)—but rather discloses that it was the judgment of the court that the verdict was excessive simply because of the improper computation of damages in view of all of the facts and circumstances, including the financial situation of the parties. This is in effect the opposite of a finding by the trial court that the jury was influenced in the amount of its verdict by passion and prejudice. Since there is nothing else to disclose passion and prejudice on the part of the jury there was no reason to grant a new trial on that ground.

There is no error in this case of which appellant can complain, and the judgment of the court below is affirmed.