No. 38,781

LOUIS C. FINKE and MILDRED FINKE, *Appellees,* v. FRANCIS A. LEMLE and AARON ECCLESTON, a co-partnership, doing business as FOWLER CONSTRUCTION COMPANY, *Appellants.*

(252 P. 2d 869)

Opinion filed January 24, 1953.

*John Staley Holden,* of Cimarron, argued the cause and was on the briefs for the appellants.

*Ernest M. Vieux,* of Meade, argued the cause and was on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, J.: This was an action to recover earnest money paid on a contract. The plaintiffs recovered and the defendants appeal.

On February 12, 1951, the defendants, Francis A. Lemle and Aaron Eccleston, partners, doing business under the firm name and style of Fowler Construction Company, and the plaintiffs, Louis C. Finke and Mildred Finke, entered into a contract which, so far as here pertinent, reads as follows:

"THIS AGREEMENT Made and entered into this 12 day of Feb., 1951, by and between Fowler Construction Co., Meade, Kansas, party of the First Part, hereinafter referred to as 'Seller,' whether one or more, and Louis C. Finke, Meade, Kansas, party of the Second Part, hereinafter referred to as 'Buyer,' whether one or more,

"WITNESSETH: That for and in consideration of the mutual promises, covenants and payments hereinafter set out, the parties hereto do hereby contract to and with each other, as follows:

"1. The Seller does hereby agree to sell and convey to the Buyer by a good and sufficient warranty deed the following described real property, situated in Meade County, State of Kansas, to wit:

"Lots Twenty (20) and Twenty-One (21), in Block Thirteen (13), Wichita, Addition to City of Meade, County of Meade and State of Kansas.

"2. The Buyer hereby agrees to purchase and pay to the Seller, as consideration for the conveyance to him of the above described real property, the sum of

"Ten Thousand Five Hundred and no/100 Dollars in manner following, to wit:

"Application for $8,000.00 FHA Loan   $1,400.00 Down Payment and $1,-100.00 at first FHA Inspection   Plus estimated closing fees of loan of $250.00.

"3. The Seller agrees to furnish to the Buyer a complete abstract of title   . . .

.    .    .    .    .    .    .    .    .    .    .    .

"4. A duly executed copy of this Purchase Agreement, together with all other documents in connection with the sale of the above described real estate, shall be deposited with

"Fowler Construction Co., Meade, Kansas.

"Wheeler Kelley Hagny Trust Co., to be delivered to the Buyer upon the Buyer's fulfillment of his obligations hereunder.

"5. The buyer agrees to and does hereby deposit with ——————— the sum of One Thousand Four Hundred and no/100 Dollars, earnest money, as a guarantee that the terms and conditions of this contract shall be, fulfilled by him, said deposit to be applied on the purchase price upon acceptance of title by the Buyer and delivery of deed by the Seller. In the event the Buyer shall fail to fulfill his obligations hereunder, the Seller may, at his option, cancel this agreement, and thereupon the aforementioned deposit shall become the

property of the Seller and his agent, not as a penalty but as liquidated damages. Provided, however, that, in the event the Seller is unable to furnish merchantable title, the earnest money deposited shall be returned to the Buyer, and this agreement shall be null and void and of no further force and effect.

. . . . . . . . . . . . . . .

"7. It is understood and agreed between the parties hereto that time is of the essence of this contract, and that this transaction shall be consummated on or before

"Subject to Party of the Second Part securing a FHA Loan in the amount stated above, if said loan cannot be secured in this amount then said contract becomes null and void, and the money paid by the buyer shall be returned in cash by the Seller."

Several months after execution of the foregoing contract plaintiffs commenced this action by the filing of a petition in which they made such contract a part of that pleading and stated it was correct, except for the fact, which we pause to note all parties now concede, the consideration was $9,500 instead of $10,500 as therein stated.

The petition then alleged the contract was entered into with the understanding defendants would build a house according to plans and specifications agreed upon and approved by the Federal Housing Administration; that plaintiffs had paid defendants the $1,400 down payment required by its terms; that they had made immediate application for the $8,000 FHA loan mentioned therein and diligently endeavored to secure the same; that such loan had been rejected with the result they were unable to obtain it; and that under the terms of the agreement they were entitled to a return of the earnest money advanced, payment of which had been demanded and refused.

In their answer defendants admitted allegations of the petition relating to the execution of the contract, the purpose for which it was executed, and the earnest money paid under its terms. They then denied all other allegations of that pleading not admitted and, by way of what they termed further and separate defenses, in substance alleged: (1) That the portion of the contract providing the amount of the down payment made by the buyer should be returned in cash by the seller in the event the FHA loan could not be obtained was void and unenforceable for uncertainty and indefiniteness in that it did not fix the time in which such loan was to be procured or the money returned; (2) that plaintiffs had not exercised good faith in their efforts to obtain such loan and that by reason thereof defendants, under the terms of the contract, were entitled to and therefore elected to cancel the agreement and de-

clare the earnest money payment of $1,400 to be their own property as liquidated damages; (3) that in reliance upon the agreement defendants had procured title to the lots therein described and incurred certain other expenditures (describing them) in connection with the construction of the house contemplated by its terms hence, because failure to obtain the sum of $8,000 or obtain the money from some other source to complete the contract was not caused by defendants but was due to neglect and bad faith on the part of the plaintiffs in failing to supplement their original application for such loan by a statement showing a subsequent increase in their monthly income, make additional applications to FHA for such loan or attempt to obtain the money elsewhere, it would be unjust and inequitable to permit plaintiffs to recover, or require defendants to pay back, any part of the money sued for.

Plaintiffs' reply consisted of a general denial and allegations to the effect that at the time of the execution of the agreement, the defendant partner, Francis A. Lemle, agreed to and thereafter did handle all details of applying for the FHA loan, including the securing of information necessary for and the preparing of forms executed by them in making the application for such loan; that after the loan in the sum of $8,000 was rejected Lemle told plaintiff Louis C. Finke, that he would wait thirty days and try the application again; that such plaintiff told him to go ahead and that thereafter nothing more was done with reference to making further application.

With issues joined as just related the cause came on for trial by a jury which, after hearing the evidence and instructions from the court as to the applicable law, returned a general verdict in favor of plaintiffs for the full amount claimed. Subsequently judgment was rendered in accord with the verdict. Thereafter defendants filed a motion for new trial and, when it was overruled, perfected this appeal in which they concede the only questions presented for review relate to errors claimed by them to have been committed by the trial court in overruling such motion.

In their brief appellants set forth the question involved, stating the trial court erred: (1) In refusing to permit cross-examination of appellees with reference to the accuracy of their books in reflecting gain or loss from an accounting standpoint. (2) In refusing to allow them to testify and introduce evidence to the effect that after they entered into the construction contract they spent $695 to purchase the lots, $66 to dig the basement, $75 to stake off the lots, supervise the digging of the basement and remove the

excess basement dirt, also to testify to the effect they had $600 to $700 worth of lumber delivered to the lots. (3) In refusing to give their special requested questions 1 through 8 inclusive. (4) In refusing to give their requested instructions 1 and 3. (5) In failing to instruct that when the FHA loan was approved in the sum of $7,000 appellees owed them the obligation or duty to obtain the other $1,000 from some other source to complete the contract.

Summarily stated, appellants' position on its first claim of error is that a financial statement, furnished to appellants and submitted by the latter along with appellees' application for a loan, was inaccurate, hence the trial court should have permitted them to cross-examine appellee, Louis C. Finke, at length respecting the state of his books, particularly the items of expense going to make up either profit or loss as reflected in that statement. As near as we can make out from the meager facts set forth in the record, which do not even include a copy of that instrument, the financial statement was made up from appellees' account books and showed the monthly profit or loss they had made since April, 1950, the date on which they had first engaged in the bakery business in Meade, to the date of the making of the application, also the average monthly income received during that time. After Louis had so testified appellants were permitted to cross-examine him as to what the books disclosed for the particular months in question and received answers disclosing that for the first month he had a loss of $196.09 for May, 1950, and a profit for the remaining months which, for our purposes, can be said to have ranged from $84.22 in January, 1951, to $416.32 in August, 1950. Appellants then sought to question Louis regarding expenditures disclosed by the books for painting the bakery business building in May, 1950, and other items of that character. Objections were made to these questions and finally sustained after appellants' counsel had stated such items might be a bookkeeping loss as far as the books were concerned but were not an actual loss from an accounting standpoint.

In the face of the foregoing record we are unable to agree with appellants' claim the fact appellees failed to allocate portions of the business expense incurred in May, 1951, to the other months covered by the financial statement but charged them all to that month had the effect of making that statement inaccurate because the books on which it was based were inaccurate. Of a certainty such fact affords no sound ground for conclusion or inference that under the then existing conditions and circumstances appellees,

at the time of making such statement, were exercising bad faith, or failing to fully co-operate with appellants, in attempting to procure the FHA loan in question. The result is the evidence sought to be elicited by appellants on cross-examination was not material to the issues involved and the trial court properly sustained objections to questions propounded on cross-examination with respect thereto.

Appellants' second claim of error to the effect the trial court erred in refusing to permit them to introduce evidence regarding expenditures made by them after the execution of the contract has no merit whatsoever. Resort to the pleadings discloses issues framed on the theory one or the other of the parties was entitled to all or none of the earnest money paid on the contract. Specifically appellants claimed the right to retain the amount of such payment as liquidated damages. With the pleadings in that state evidence of the character appellants sought to adduce could neither decrease nor increase the amount of their recovery. Hence it was wholly immaterial and properly excluded.

At the conclusion of the trial counsel for appellants requested the court to submit to the jury eight special questions. This request was denied and in lieu of questions requested the court submitted two of its own which read: "1. State whether or not the plaintiffs made application for the FHA loan in the sum of $8,000.00 in good faith. 2. If you answer No. 1 in the negative, state wherein plaintiffs failed to use good faith." The jury answered question 1 in the affirmative and, in view of that answer, made no answer to question 2. Appellants argue that under the statute, G. S. 1949, 60-2918, a defendant has the right to request and have submitted at least ten special questions. It must be conceded this is true if the questions requested are on any controverted facts, if they are material, and if they are of the type that there is evidence from which the jury can answer them (See *Colin v. DeCoursey Cream Co.*, 162 Kan. 683, 688, 178 P. 2d 690, and cases there cited, also the many other cases collected in Hatcher's Kansas Dig., Trial, §§ 266 to 281 incl.; West's Kansas Dig., Trial, §§ 349, 350). On the other hand the authorities just cited and many others (See, e. g., *Bothe v. True*, 103 Kan. 562, 175 Pac. 395; *Doty v. Crystal Ice & Fuel Co.*, 122 Kan. 653, 253 Pac. 611; *Sluss v. Brown-Crummer Inv. Co.*, 143 Kan. 14, 53 P. 2d 900; *Moseman v. Penwell Undertaking Co.*, 151 Kan. 610, 618, 100 P. 2d 669; *Alexander v. Wehkamp*, 171 Kan. 285, 291, 232 P. 2d 440), recognize the trial court has a wide discretion respecting the special

questions to be submitted to the jury and that when they are not of the type above mentioned or where it appears they are not pertinent to the issues, supported by the evidence, or intended to bring out some ultimate fact in the case it is proper to refuse to submit them. By way of further illustration see *Snyder v. Eriksen*, 109 Kan. 314, 198 Pac. 1080, where we held:

> "It is competent for the court to supervise and shape special interrogatories that are submitted to a jury and it may reject questions that are improper or immaterial and limit the questions to ultimate facts on controverted issues." (Syl. ¶ 3.)

We are not disposed to burden this opinion by setting forth the special questions requested by appellants or labor the arguments advanced in support of their third claim of error that the court erred in refusing to submit them. It suffices to say that after carefully scrutinizing such questions, in the light of the statute (G. S. 1949, 60-2918) and our decisions construing the force and effect to be given its terms, we are convinced they were designed to require the jury to recapitulate the evidence and cross-examine them as to the entire case rather than to require them to determine the ultimate fact on the controverted issue in the case, *i. e.*, whether the appellees had exercised good faith in their efforts to obtain the FHA loan contemplated by the contract. In that situation it cannot be said the trial court erred in refusing to submit such questions and substituting in lieu thereof two special questions limited to, and covering the entire field of, the ultimate fact on the controverted and all decisive issue.

Appellants requested instructions 1 and 3 were based upon the theory that if appellees had failed to exercise good faith in obtaining the FHA loan appellants were entitled to recover compensation for all work performed, materials furnished, and damages sustained by reason of failure to complete the contract and were properly refused because, under the terms of the contract itself as well as the issues framed by the pleadings, appellees were either entitled to a return of the earnest money paid or appellants were entitled to retain it all as liquidated damages. Appellants claim instruction 1, as submitted, was erroneous because it failed to instruct that when the FHA loan of $7,000 was approved appellees owed appellants the duty of obtaining the additional $1,000 from some other source to complete the contract cannot be upheld because there is nothing to be found in the agreement requiring action of that character on the part of appellees.

We find nothing in the record, or in other contentions advanced by appellants respecting their claims of error not herein specifically referred to, which would permit or warrant a disturbance of the judgment. Therefore it is affirmed.