No. 42,114

Robert Edwin Thornton, Jr., a Minor, by and through Robert Edwin Thornton, Sr., His Father, Natural Guardian, and Next Friend, *Appellant*, v. Kenneth C. Bench, *Appellee*.

.(360 P. 2d 1065)

Opinion filed April 8, 1961.

Albert L. Kamas, of Wichita, argued the cause, and *Milton Zacharias, Kenneth H. Hiebsch, Richard A. Render, Donald E. Lambdin* and *David G. Arst,* all of Wichita, were with him on the briefs for appellant.

*Robert M. Siefkin,* of Wichita, argued the cause, and *George B. Powers, Carl T. Smith, John F. Eberhardt, Stuart R. Carter, Robert C. Foulston, Malcolm Miller, Robert N. Partridge, Richard C. Harris, Gerald Sawatzky, Donald L. Cordes* and *Robert L. Howard,* all of Wichita, were with him on the briefs for appellee.

The opinion of the court was delivered by

Fatzer, J.: This was an action to recover for personal injuries sustained in a collision of two automobiles at a city intersection. The plaintiff was a passenger in one automobile, and he alleged the collision resulted from the negligence of the defendant, the driver of the other automobile. The jury by its general verdict found for 'the defendant, and in answer to special questions specifically found that the defendant was not guilty of any negligence but that the plaintiff's driver was guilty of negligence which caused the accident. The plaintiff appeals from orders overruling his motion for a directed verdict at the close of all the evidence, and his motion for a new trial.

The accident occurred at approximately 5:15 p. m. on August 8, 1957, at the intersection of Clark and Volutsia Streets in Wichita, Kansas. At that intersection Clark Street, an east-west street, makes a seven foot jog to the south. The defendant Bench and his wife were returning from their place of employment at Boeing Airplane Company in their 1957 station wagon. They were proceeding north on Volutsia, a north-south street, to their home two and a half blocks north of the intersection where the collision occurred. Bench was driving and he was going slow as he approached Clark Street. One block south of Clark, Volutsia Street makes a complete jog of about two widths of the street. In the block south of the Clark Street intersection construction was in progress and a truck was parked on the west side of the street. The defendant testified children usually played in the street and he always drove slow through that block on his way home. His top speed in the block was 20 miles per hour at most. The defendant slowed down as he approached the intersection and looked to the east when he was about eighteen feet from the south line of Clark Street as it extends west. He looked to the east and then to the west and saw no cars coming. When he first looked to the east he was going slow enough to stop before entering the intersection. At that time he estimated he was approximately two car lengths south of the south line of Clark Street extending west. When he reached the center of the intersection he first saw the car in which the plaintiff was riding coming from the east on Clark Street at a high speed, between 30 and 40 miles per hour, and skidding its wheels. That car was driven by Phillip R. Hurst, a friend of the plaintiff. When the defendant first saw the Hurst car in the intersection, he (defendant) was going about 15 miles per hour and he tried to pull to the left away from the Hurst car as it came toward the right side of his car. The front of the Hurst car struck the right side of the defendant's car in front of the door and knocked the defendant's car to the northwest corner of the intersection. While there was conflicting testimony whether the defendant braked his car prior to the impact, he testified that he did not, and the jury's general verdict and its answers to special questions support the defendant's testimony that he did not brake his car prior to the impact.

The extent of plaintiff's injuries is not here involved.

The plaintiff and Hurst each was 18 years old. They had left work at the Boeing Airplane Company on their way to Burrton

where they were to have dates that evening. The plaintiff testified that, as a result of his injuries, he had no independent recollection as to what happened after he and Hurst left the Boeing parking lot until he awoke in the hospital, and he did not remember the direction Hurst drove after leaving the parking lot, or how they got on Clark Street. Hurst was killed in a railroad crossing accident three days before the trial, so plaintiff's evidence consisted of testimony of the defendant and his wife, two traffic officers of the Wichita police department, statements made by both drivers after the accident, and of the physical findings at the intersection.

At the close of all the evidence the plaintiff moved for a directed verdict which was overruled. The trial court instructed the jury, and submitted special questions. While the jury was deliberating, it sent a message to the court stating it had found the defendant was not guilty of any negligence as charged in the petition, and asked what else it should decide. The trial court gave an additional instruction that the pleadings had been amended to include all the evidence, and that if the defendant was guilty of any negligence which was a proximate cause of the collision and the plaintiff was not guilty of any negligence, then it should find for the plaintiff.

Thereafter the jury brought in a general verdict for the defendant, and answered the trial court's special questions as follows:

"Q. Was the plaintiff's driver, Phillip Hurst, guilty of negligence which was a cause of the accident? A. Yes. Q. If you answer question No. 1 in the affirmative, state what act or acts of negligence on his part was or were a cause of the accident. A. The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection from a different highway. Q. Was the defendant Bench guilty of any negligence which was a cause of the accident? A. No. Q. If you answer question No. 3 in the affirmative, state what act or acts of negligence on his part was or were a cause of the accident. A. (blank)."

Neither party objected to the answers to the special questions. The trial court accepted the general verdict and the answers to the special questions and rendered judgment for the defendant. Plaintiff's motion for a new trial was overruled, and this appeal followed.

While the plaintiff makes six specifications of error, he briefs and argues only two points. He first contends the trial court erred in overruling his motion for a directed verdict when all the evidence, including the defendant's testimony, taken in the light most favorable to him, disclosed that he failed to look at a time when he

could plainly see, and having failed to see an automobile which was their plainly to be seen, the defendant entered an open intersection simultaneously with an automobile approaching the intersection from his right, which caused the collision, and that the acts of the plaintiff in no way contributed thereto.

It would serve no useful purpose to recite the highly controversial evidence as testified to by the parties and their respective witnesses. This was purely a fact case. The only fact not in controversy was that the accident occurred at the intersection of Clark and Volutsia Streets at about 5:15 p. m. on August 8, 1957.

The plaintiff's argument is based upon his version of the evidence from his own witnesses and is predicated largely upon technical and involved computations based upon averages and distances which were but rough approximations, and upon conflicting evidence concerning skid marks. The record indicates the trial below was a typical negligence action in which each party was entitled to a trial by a jury upon their respective claims of negligence and contributory negligence. The jury was instructed that it was not limited to considering only the items of negligence alleged by the plaintiff but that if any other negligence appeared in the evidence, it should find for the plaintiff. The record indicates the trial court exhibited great concern to protect the rights of both parties, and liberally allowed the plaintiff to present a broad range of direct and circumstantial evidence, and expert testimony based thereon. It also allowed the plaintiff to amend his pleadings to conform to the evidence and fully and fairly instructed the jury on the question of negligence of the defendant and contributory negligence of the plaintiff and of proximate causes, and that if the plaintiff recovered, it must be on the grounds of negligence alleged in his petition as amended. No complaint is made of the exclusion of any evidence, nor of error in the court's instructions to the jury.

The issues raised by the pleadings and the evidence were questions of fact which were properly submitted to the jury and the jury's general verdict for the defendant constituted a finding in his favor upon all issues in the case and also upon the question that the defendant was not guilty of any negligent act which was the proximate cause of the plaintiff's injury. By its answers to the special questions the jury found in effect that the defendant entered the intersection first and that the Hurst automobile should have

yielded the right of way in accordance with instruction No. 8 which was not objected to, and with G. S. 1949, 8-550 (a).

The plaintiff's evidence presented a situation where reasonable minds might differ on conflicting testimony as to just who was negligent, and that being the case, the motion for a directed verdict was properly overruled. What was said by Mr. Chief Justice Harvey in *Lawrence v. Kansas Power & Light Co.*, 167 Kan. 45, 204 P. 2d 752, is clearly applicable on this point:

"The legal questions here involved are so well settled in our law that they need not be labored. The actions were ones at common law in which plaintiffs sought damages alleged to have resulted from defendant's negligence, and defendant had pleaded contributory negligence of the plaintiffs. These are the kinds of actions in which each party is entitled to a trial by a jury as a matter of right. They should not be converted into trials by the court. Negligence is the lack of due care. The instances are relatively rare when the facts are such that the court should say that as a matter of law the negligence alleged has been established. Before the court should make such a holding the evidence should be so clear that reasonable minds, considering it, could have but one opinion, namely, that the party was negligent. In these cases we think the contributory negligence of plaintiffs (here, the alleged negligence of the defendant) was clearly a question of fact for the jury. More than that, plaintiffs were not required to anticipate that with their car in the intersection defendant's bus would be driven into it and against their car at a speed of twenty-five to thirty miles per hour, with its driver not watching enough to know that the car was in the intersection. Under the evidence the jury might very well have found such acts of defendant to be the proximate cause of injury." (l. c. 49.)

Other cases which are also applicable are *Rowell v. City of Wichita*, 162 Kan. 294, 176 P. 2d 590; *Samms v. Regier*, 167 Kan. 556, 207 P. 2d 414; *Mehl v. Carter*, 171 Kan. 597, 237 P. 2d 240; *Blankenship v. Fraker*, 173 Kan. 438, 249 P. 2d 683; *Cain v. Steely*, 173 Kan. 866, 252 P. 2d 909, and *Siegrist v. Wheeler*, 175 Kan. 11, 259 P. 2d 223. Cases of like effect may be found in 4 Hatcher's Kansas Digest [Rev. Ed.], Negligence, §§ 72 to 75, incl., and West's Kansas Digest, Negligence, § 136 (9), (14), (25) and (26).

The plaintiff's second point is that the trial court erred in the admission into evidence of defendant's Exhibit A. That exhibit was a written repair bill or estimate of an automobile dealer for repair of the damages to the defendant's station wagon. It disclosed various items of damage, including the fact that the frame of the car had been knocked out of alignment. It was introduced into evidence during the cross-examination of the defendant by counsel for the defendant after the defendant had been called as a witness for

the plaintiff. On direct examination plaintiff's counsel had questioned the defendant concerning the facts surrounding the accident including the speed of his car, the estimated speed of the car in which the plaintiff was riding, and estimated distances of both cars at the time the defendant entered the intersection. The plaintiff's first objection was solely on the ground of improper cross-examination based on the theory that he had not gone into the issues of damages on direct examination. In overruling the objection the trial court pointed out that the damage to the car had some bearing on speed. The defendant testified that the speed was fairly represented by the items damaged to his car. When offered into evidence, plaintiff made the following objection:

"MR. KAMAS: Your honor, until they have a better foundation or a better reason for this I would like to object to it as being irrelevant and immaterial and improper cross-examination.

"MR. SIEFKIN: It shows where the impact was, the severity of the impact.

"THE COURT: Well, if you want to delete the expense items.

"MR. KAMAS: That isn't the basis of my objection, Your Honor. I have no objection to the nine hundred dollars; *it is just the relevancy of it.*

"THE COURT: I didn't understand you. The objection is overruled. The exhibit is admitted." (Emphasis supplied.)

As it noted, plaintiff's objection was solely on the ground of irrelevancy. He here contends that the trial court erred in overruling the objection on the ground that the exhibit was hearsay. What was said in *Gaynes v. Wallingford,* 185 Kan. 655, 347 P. 2d 458, fully answers the contention:

". . . The short answer to the contention is that the appellant made no objection to the testimony as not being the best evidence, or that it was hearsay as to the appellant, and made no motion to strike the evidence for those reasons. Under such circumstances, the objection comes too late when it is first made on appellate review (*Long v. Lozier-Broderick & Gordon,* 158 Kan. 400, 147 P. 2d 705." (l. c. 661.)

In this case the appellant has the duty to make it affirmatively show that the trial court erred. A thorough examination of the record convinces us that error was not committed. This conclusion requires an affirmance of the judgment.

It is so ordered.