No. 42,834

ARNOLD FOLKERTS, *Appellee*, v. THE KANSAS POWER AND LIGHT COMPANY, a Corporation, *Appellant.*

(372 P. 2d 997)

160

Opinion filed July 7, 1962.

*Robert E. Russell* and *Lawrence D. Munns,* of Topeka, argued the cause, and *Harry W. Colmery, James E. Smith* and *O. R. Stites, Jr.,* of Topeka, were with them on the briefs for appellant.

*Harold E. Doherty,* of Topeka, and *Hugh D. Mauch,* of Great Bend, argued the cause, and *James E. Benfer,* of Topeka, and *Melvin O. Nuss, Vernon L. Nuss,* and *James P. Johnston,* of Great Bend, were with them on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: This was an action to recover for personal injuries sustained in a collision of two automobiles at a blind rural intersection in Rush County. Judgment was for the plaintiff, and the defendant has appealed.

There is very little, if any, dispute as to the facts. They are briefly summarized: The collision occurred at about 6:15 p. m. at the intersection of two county roads; both were graveled, and approximately 25 feet in width; the north-south road on which the defendant's car was traveling north was elevated slightly above the east-west road on which the plaintiff was traveling west. Weeds and crops were growing at the southeast corner of the intersection, limiting visibility. When the plaintiff was about a quarter of a mile east of the intersection he was traveling 30 to 35 miles per hour. He was familiar with the intersection and knew it to be dangerous and hazardous, and as he approached it, he reduced his speed to ten or fifteen miles per hour. When he was 50 to 60 feet from the intersection he looked to the north and to the south, and could see tall feed and weeds and some of the county road about 40 feet south. When he reached a point ten feet east of the intersection, he observed the defendant's car 100 feet south. Believing he had ample time to cross, he proceeded into the intersection. As his car was leaving the intersection, it was struck in the left rear portion by the defendant's car.

The defendant's driver testified that he observed plaintiff's car when it was 25 feet east of the intersection and at that time he was 175 feet south of the intersection; that he traveled about 100 feet before he applied his brakes; that he left 103 feet of skid marks, and that he struck plaintiff's car, demolishing both vehicles. He further testified that it would take from 300 to 400 feet to stop his car at the speed he was traveling; that he was familiar with the intersec-

tion and knew it to be dangerous and hazardous; that he had worked his crew late that evening and was hurrying home; that he could not stop within the range of his vision, and that one could not slow down for every intersection.

A passenger in the defendant's car testified he was crew foreman for the defendant, and they were probably 200 or 300 feet south of the intersection when the plaintiff's car was 20 or 30 feet east of it; that because he threw his hands up and covered his face he did not see the plaintiff's car again, nor could he see the speedometer to know how fast they were going.

The plaintiff's son was riding with him and he testified that the defendant's car was traveling between 70 and 75 miles an hour when the driver applied his brakes, and that it slid or skidded to the west or left side of the road, striking the plaintiff's car on its side toward the rear.

The plaintiff·was thrown from his car and suffered severe permanent injuries requiring long hospitalization and continued medical and surgical care.

The case was tried by a jury which returned a general verdict for plaintiff in the amount of $55,000, and answered special questions as follows:

"1. Do you find that the defendant's driver was guilty of any acts of negligence which were a proximate cause of the collision?

"Answer: Yes.

"2. If you answer No. 1 in the affirmative, state what those acts of negligence consisted of?

"Answer: (1) Failure to keep his automobile under reasonable and proper control; (2) Defendant's driver failed to yield the right of way to the vehicle driven by plaintiff.

"3. Do you find that the plaintiff was guilty of any acts of negligence which were a proximate cause of the collision?

"Answer: No.

"4. If you answer No. 3 in the affirmative, state what those acts of negligence consisted of?

"Answer: No answer.

"5. If you find in favor of the plaintiff, how much do you allow for the following elements of damage:

| | |
|---|---|
| Past Medical Expense: | $ 3,000. |
| Future Medical Expense: | $ 7,000. |
| Loss of Earnings: | $30,000. |
| Pain & Suffering: | $ 5,000. |
| Permanent Injury: | $10,000. |
| Total: | $55,000." |

The defendant first contends the district court erred in overruling its demurrer to the plaintiff's evidence, its motion for a directed verdict at the close of all the evidence, and its motion for judgment. It argues that the admissions of the plaintiff during the course of his testimony clearly established that he was contributorily negligent as a matter of law, and cites and relies upon *Green v. Higbee*, 176 Kan. 596, 272 P. 2d 1084.

In determining whether a plaintiff is guilty of contributory negligence when tested by a demurrer, the question must be submitted to the jury if the facts are such that reasonable minds might reach different conclusions. (*Cain v. Steely,* 173 Kan. 866, 873, 252 P. 2d 909.) Simply stated, did the plaintiff's evidence show that he acted as an ordinary, prudent person would act under the same or similar circumstances? We are of the opinion that reasonable minds might reach different conclusions on the question, and that it was properly submitted to the jury. (*Lawrence v. Kansas Power & Light Co.,* 167 Kan. 45, 49, 204 P. 2d 752.) The evidence was undisputed that the plaintiff looked to the south and could see part of the county road 40 feet to the south of the intersection and no cars were in sight. He reduced his speed from 30 to ten or fifteen miles per hour. When he was ten feet from the intersection he saw the defendant's car 150 feet to the south and he thought he had ample time to cross. As the front of his car was leaving the intersection and when there was room for the defendant's car to have passed to the rear, the defendant's vehicle skidded or swerved to the left or west side of the road and struck the left side of the plaintiff's car at the rear. We think what was said and held in *Domann v. Pence*, 183 Kan. 135, 139, 325 P. 2d 321, is controlling. The facts of both cases are almost identical, and the reader is referred to that opinion. It was there held that those facts did not give rise to the application of the rule announced in *Green v. Higbee,* supra, where it was held that a demurrer was properly sustained to the plaintiff's evidence which showed that plaintiff had entered a blind rural intersection at a speed of approximately 40 to 50 miles per hour. The district court was of the opinion this was not a "*Green v. Higbee*" case. We agree. An examination of instruction 13 establishes that the jury was fully and properly instructed where an accident occurs at a blind intersection of rural roads without stop signs. We are of the opinion the district court did not err in overruling the defendant's demurrer and its motions for a directed verdict and for judgment.

It is next contended that the district court committed reversible error when it denied the defendant the right to submit to the jury ten special questions as provided by G. S. 1949, 60-2918, upon claimed material controverted issues of fact. The questions read:

"Q. Do you find from the evidence that the Southeast corner of the intersection involved was a blind intersection?  Q. Was this a hazardous and dangerous intersection?  Q. Did the plaintiff have his auto under control for whatever he might encounter at the intersection while approaching and entering said intersection?  Q. At what rate of speed was plaintiff traveling as he entered the intersection?  Q. At what portion of the intersection did the collision occur?  Q. How far East of the East edge of the North and South gravel road could the plaintiff have seen the defendant's vehicle?  Q. How far East of the East edge of the North and South gravel road did the plaintiff see the defendant's vehicle?  Q. Where was the defendant's vehicle at the time plaintiff first saw it?  Q. When plaintiff first saw defendant's vehicle did he make any effort to judge the speed of said defendant's vehicle?  Q. Did the plaintiff attempt to avoid the collision and if so state how?"

The defendant's contention cannot be sustained. Under the issues formed by the pleadings and the evidence, the only questions of ultimate fact were: Was the defendant negligent? Was the plaintiff contributorily negligent? What was the proximate cause? And, what were the items of damages? All of those were covered in the special questions submitted to the jury. The well-considered case of *Albin v. Munsell*, 189 Kan. 304, 369 P. 2d 323, is decisive of the question under consideration, hence we quote at length from that opinion:

"Appellants next complain because the trial court refused to give most of the special questions prepared and asked by them and instead prepared and gave some of its own. The gist of all arguments advanced on this point is that under the provisions of G. S. 1949, 60-2918, appellants were entitled to request ten questions and the court was required to give them. Conceding appellants had a right to request submission of their requested questions it does not follow the trial court was required to give them, particularly in the form requested. This court long ago established the rules governing the contentions raised by appellants in connection with the matter now under consideration. See *Doty v. Crystal Ice & Fuel Co.*, 122 Kan. 653, 253 Pac. 611, where it is held:

" 'The trial court has discretionary supervision of the form and nature of special questions which may be submitted to a jury, and may properly refuse to submit questions which are highly technical, or which are not focused on the ultimate facts of the matter in issue, or which are designed merely to recapitulate the evidence rather than to determine the facts proven by the evidence.' (Syl. ¶ 1.)

"See, also, *Sluss v. Brown-Crummer Inv. Co.,* 143 Kan. 14, 53 P. 2d 900, which holds:

" 'The trial court has a wide discretion as to the special questions to be submitted to the jury, and where it appears that a question is not intended to bring out some ultimate fact in the case it is proper to refuse to submit it.' (Syl. ¶ 5.)

"And in more recent decisions the court has consistently adhered to the rules announced in the foregoing decisions. See *Reda v. Lowe,* 185 Kan. 306, 314, 342 P. 2d 172; *Kurdziel v. Van Es,* 180 Kan. 627, 633, 306 P. 2d 159; *Finke v. Lemle,* 173 Kan. 792, 797, 798, 252 P. 2d 869; *Alexander v. Wehkamp,* 171 Kan. 285, 291, 232 P. 2d 440." (l. c. 312, 313.)

In denying the motion for a new trial, the district court pointed out that it refused to submit the requested special questions because they were evidentiary in nature and did not pertain to matters of ultimate fact, and would not have affected the verdict. The requirement is that the district court submit special questions on issues of ultimate fact and not those designed to cross-examine the jury, or which are evidentiary in nature. An examination of the record discloses that the special questions submitted were limited to the ultimate facts on the controverted issues. Those requested by the defendant tended to recapitulate the evidence rather than to determine the ultimate facts. For that reason the district court's denial of the defendant's requested special questions did not result in such an abuse of its discretionary power as to constitute reversible error. (*Albin v. Munsell,* supra.)

The defendant lastly contends the jury's award of $30,000 damages for loss of earnings was entirely speculative and conjectural. It is claimed there was no competent evidence upon which to base such an award. The plaintiff testified on redirect examination as follows:

"Q. I have one or two questions. Mr. Folkerts, how much money were you earning annually prior to your injuries in 1958? Mr. Russell: Object to it as improper redirect, if Your Honor please. The Court: Overruled. A. Four Thousand Dollars. Q. And how much have you earned since your injuries? A. About fifteen hundred dollars."

On cross-examination he testified:

"Q. Mr. Folkerts, I believe you said that you are still operating the same land that you operated before the accident? A. Yes, sir. Q. And isn't it a fact that you have testified previously that your 1959 income, gross income, was around three thousand dollars? A. That's right."

The plaintiff is a farmer operating 324 acres. At the time of the accident he was 48 years old and capable of doing a hard day's

work. The evidence showed he was a good farmer; that he was industrious, thrifty, and in good health. As previously indicated, he received severe permanent injuries to his back, spine, legs, bladder and pelvis, and that he would never again be able to carry on his work as he had prior to his injuries. There was evidence that he would need medical care for the remainder of his life and that once each six weeks or oftener he would be required to have surgical operations. It was stipulated that he had a life expectancy of 300 months, or 25 years.

The only question before this court is whether there was evidence to support the finding of the jury of loss of earnings of $30,000. The defendant argues that there was no testimony of any profit in the plaintiff's farming activities; that he produced no records and no income tax reports or books, and that it was impossible to tell from the record whether he made or lost money each year. We do not agree. There was evidence that the plaintiff was losing $2,500 a year in earnings as a result of his injuries, and that he had a life expectancy of 25 years. That evidence would support a finding of more than was returned by the jury. Whether error might have been committed in admitting the evidence that plaintiff was losing $2,500 per year is not before us. At the hearing of the motion for a new trial the defendant did not stress the fact that such evidence might have been incompetent. It merely argued that there was no evidence to support the finding. On this point we think what was said in *Gaynes v. Wallingford*, 185 Kan. 655, 347 P. 2d 458, is pertinent:

". . . The short answer to the contention is that the appellant made no objection to the testimony as not being the best evidence, or that it was hearsay as to the appellant, and made no motion to strike the evidence for those reasons. Under such circumstances, the objection comes too late when it is first made on appellate review (*Long v. Lozier-Broderick & Gordon*, 158 Kan. 400, 147 P. 2d 705)." (l. c. 661.)

See, also, *Jaggar v. Plunkett*, 81 Kan. 565, 106 Pac. 280; *Leake v. Chaddock*, 129 Kan. 499, 283 Pac. 625; *Kirkpatrick v. Wickwire*, 138 Kan. 230, 25 P. 2d 371, and *Thornton v. Bench*, 188 Kan. 89, 360 P. 2d 1065.

In *Albin v. Munsell*, supra, the rule regarding damages was stated as follows:

". . . In this jurisdiction the kind of proof required to establish the essential elements of damage involved in a tort action may be different but when the evidence with respect thereto is all in and it affords data, facts, and circum-

stances reasonably certain from which liability, and actual loss can be determined, it is the jury's province to determine the amount of damages sustained on the basis of such evidence. This, we may add, is so even though no witness has testified in the case expressing an opinion as to the amount of such damages. . . ." (l. c. 311.)

There was evidence of what the plaintiff was earning before his injuries and what he earned subsequent thereto. On appellate review this court does not weigh evidence, but merely determines whether the evidence supports the findings. In this case it is clear that it does.

The burden is upon the defendant to make it affirmatively appear that there is reversible error in the record, and we fail to perceive any. The judgment of the district court is affirmed.

SCHROEDER, J., dissenting: In my opinion, the plaintiff (appellee) was guilty of contributory negligence as a matter of law.

The only material question presented by this appeal is:

"Did the plaintiff have his auto under control for whatever he might encounter at the intersection while approaching and entering said intersection?"

This is the third question requested for submission to the jury by the defendant (appellant).

The plaintiff by his own testimony admitted that he had traveled the road where the collision occurred "lots of times"; and was familiar with the road and the intersection where the accident occurred; that on the southeast corner of the intersection there was tall feed and some weeds in the ditch; that he was familiar with the sorgo crop growing in the field on the southeast corner of the intersection; and *that he could not see the road to the south;* that a driver in his position would have to be 10 feet back of the intersection before he could see down the road 400 feet to the south; that *he knew this was a hazardous and dangerous intersection;* that he was traveling 30 to 35 miles per hour as he approached the intersection, and *when he was 40 feet from the intersection he looked to the south and could see the tall feed, weeds and some of the county highway 40 feet to the south;* that he continued toward the intersection; that he slowed down to approximately 10 or 15 miles per hour; that *the second time he looked to the south he was about 5 or 10 feet from the intersection* and saw the defendant's automobile approaching approximately 150 feet to the south; and that after he saw the defendant's automobile approaching he continued on across the

highway thinking he had "plenty of time to make it." He further admitted that *he did not look at the vehicle coming from the south in such a way as to determine the rate of speed it was traveling*, and *he "wouldn't know how fast it was going."* He further testified that he *did not apply his brakes or turn to the right* when there was nothing to keep him from so doing; and that when he entered the intersection his hands were on the steering wheel where they remained until the time of the impact. He further stated *his right foot was on the gas throttle and it remained there until the time of the collision.*

In my opinion, these admissions by the plaintiff fall within the facts and the rules stated in *Green v. Higbee,* 176 Kan. 596, 272 P. 2d 1084. The rules for testing the sufficiency of the evidence on a demurrer do not overcome the overriding effect of admissions made by a party. (*Blackmore v. Auer,* 187 Kan. 434, 357 P. 2d 765.) In *Green v. Higbee,* supra, Syllabus ¶ 5 reads:

"Where the only evidence involved consists of admissions by a party which plainly convict him of negligence which contributed to an injury advantage may be taken thereof by demurrer."

In my opinion, the plaintiff did not have his vehicle under control *at the time he made his first effective glance to the south* which disclosed the presence of the defendant's vehicle. *This glance was destined to be a futile one because he had passed beyond the point of control when he first saw the plaintiff's vehicle.* This situation was presented in *Jarboe v. Pine,* 189 Kan. 44, 366 P. 2d 783. There, as here, the plaintiff was approaching the intersection from the right and had entered the intersection first. In the opinion the court said:

"The appellant did not look to the south and ascertain the presence of the appellee's vehicle until he was 25 or 30 feet from the center of the intersection in question. This would place him 10 or 15 feet from the edge of the intersection. Traveling at approximately 20 miles per hour an automobile with good tires and good brakes on a smooth, dry brick surface would require in excess of a total of 44 feet to stop. (See, *Orr v. Hensy,* 158 Kan. 303, 310, 147 P. 2d 749.) The foregoing evidence was supplied either by the appellant or the appellant's witness, a police officer. It is obvious when the appellant first looked to the south and ascertained the appellee's presence, it was too late to enter the intersection with his vehicle under control. His automobile would have been from 14 to 19 feet beyond the center of the intersection before he could have stopped, if his brakes had been simultaneously applied when he first saw the appellee. Therefore, the appellant's first effective glance was destined to be a futile one. He had passed beyond the point of control

when he first saw the appellee's vehicle. Contributory negligence is established the instant the driver of a motor vehicle fails to maintain a proper lookout, and it bars him as a plaintiff from recovery. The appellant was bound to use reasonable care to avoid a collision and is presumed in law to have seen that which he could have seen had he kept a proper lookout. . . ." (p. 49.)

It is therefore respectfully submitted that the trial court erred in overruling the demurrer to the defendant's evidence and in overruling the motion for a directed verdict at the close of all the evidence.

The factual situation presented in *Domann v. Pence,* 183 Kan. 135, 325 P. 2d 321, in my opinion, is distinguishable on the ground that there the plaintiff kept a constant vigilance for the approach of vehicles at a blind intersection and proceeded into the intersection with such caution as was felt sufficient, at least, for submission to a jury.

Assuming the foregoing question was one which should properly have been submitted to a jury for determination, the trial court, in my opinion, committed reversible error in refusing to submit the foregoing requested special question to the jury. All of the special questions requested by the defendant for submission to the jury, except the third question as heretofore quoted, could be answered adversely to the plaintiff from the admissions made by the plaintiff in his testimony. Therefore, the trial court was justified in the exercise of its power of discretion in refusing to submit these special questions to the jury. They could be labeled as an attempt to cross-examine the jury on the evidence. On this state of the facts *these points became the subject of instructions to the jury.* But question No. 3 did not fall in this category, and it was an ultimate fact to be determined by the jury. The case of *Nordman v. Johnson,* 94 Kan. 409, 146 Pac. 1125, accumulates and reviews the cases on this point and defines an ultimate fact—a fact which is the subject of a special verdict. Whether the plaintiff had his vehicle under control as he entered the intersection, when he first observed the approach of the defendant's vehicle, was a controverted issue of fact framed by the pleadings in this case. It related directly to the contributory negligence of the plaintiff.

G. S. 1949, 60-2918 reads in part as follows:

"The verdict of a jury is either general or special. . . . A special verdict is that by which the jury finds facts only. It must present the facts as established by the evidence, and not the evidence to prove them; and they must be so presented that nothing remains to the court but to draw from them

conclusions of law. In all cases the jury shall render a general verdict, *and the court shall in any case at the request of the parties thereto, or either of them, in addition to the general verdict, direct the jury to find upon particular questions of fact, to be stated in writing by the party or parties requesting the same: Provided, That no one party shall in any case be entitled as a matter of right to request more than ten such special questions* but the court may in its discretion allow more than ten special questions. When the special finding of facts is inconsistent with the general verdict, the former controls the latter, and the court may give judgment accordingly." (Emphasis added.)

It may be conceded that the trial court has a wide discretion in the submission of special questions to a jury (*Sluss v. Brown-Crummer Inv. Co.,* 143 Kan. 14, 53 P. 2d 900; and *Albin v. Munsell,* 189 Kan. 304, 369 P. 2d 323); that it may refuse to submit special questions which are not pertinent to the issues, or which are designed to require the jury to recapitulate the evidence and cross-examine them (*Finke v. Lemle,* 173 Kan. 792, 252 P. 2d 869); that it may refuse to submit questions which are immaterial to a decision of the case (*Loveless v. Ott,* 121 Kan. 728, 736, 250 Pac. 324); that it may refuse to submit special questions which cannot be answered from the evidence (*Bothe v. True,* 103 Kan. 562, 175 Pac. 395); that it is not required to submit more than ten special questions requested by a party (*Alliston v. Shell Petroleum Corp.,* 143 Kan. 327, 343, 55 P. 2d 396; and *Hamilton v. Lanoue,* 145 Kan. 768, 774, 67 P. 2d 574); and that it may refuse to give special questions which are in substance covered by other questions submitted (*Moseman v. Penwell Undertaking Co.,* 151 Kan. 610, 618, 100 P. 2d 669); but it is *reversible error* for a trial court to refuse to submit special questions, which are properly framed, when requested by a party, provided the questions do not exceed ten in number, they are material to the issues framed by the pleadings, and they are directed to ultimate facts upon issues controverted by the evidence. (G. S. 1949, 60-2918; *A. T. & S. F. Rld. Co. v. Ayers,* 56 Kan. 176, 180, 42 Pac. 722; and *Gates v. Western Casualty & Surety Co.,* 153 Kan. 469, 475, 112 P. 2d 106; see, also, *Colin v. DeCoursey Cream Co.,* 162 Kan. 683, 178 P. 2d 690; *Earhart v. Tretbar,* 148 Kan. 42, 80 P. 2d 4; *Davidson v. Douglass,* 129 Kan. 766, 770, 284 Pac. 427; *Francis v. Brock,* 80 Kan. 100, 102 Pac. 472; *Koehn v. Central National Ins. Co.,* 187 Kan. 192, 205, 354 P. 2d 352; 53 Am. Jur., Trial, § 1065, p. 737; and § 1068, p. 739.)

The specific grounds of plaintiff's contributory negligence alleged in the defendant's answer, which were denied by the plaintiff, are (1) failure to keep a proper lookout for other automobiles

and in particular the defendant's automobile upon the highway and within the intersection; (2) failure to keep his automobile under reasonable control; (3) failure of the plaintiff to give any warning of his presence to the other vehicles upon the highway; (4) failure to operate his automobile in a careful and prudent manner; (5) failure and neglect to stop or turn his automobile aside in order to have avoided the collision; and (6) operating his automobile at such a high rate of speed he was unable to maintain control of the same.

Whether the plaintiff had his vehicle under control as he entered the intersection was a controverted issue of fact under the evidence, and the special question on this point was properly framed.

Whether the plaintiff was negligent, and whether such negligence was a proximate cause of the collision, are conclusions to be drawn from the ultimate facts, and cannot be said to elicit from the jury the determination of an ultimate fact. (*Nordman v. Johnson,* supra.)

In *Ray v. Allen,* 159 Kan. 167, 152 P. 2d 851, the plaintiff was on the right and had entered the intersection first. When he first saw the defendant's vehicle he did not judge its speed or make any effort to do so. This was considered to be negligence under the circumstances there presented.

It is respectfully submitted, if it was proper for the jury to determine this case, the trial court should be reversed and a new trial granted.

PRICE, J., joins in the foregoing dissenting opinion.