THE MISSOURI, KANSAS & TEXAS RAILWAY COMPANY
v. W. T. FOWLER.

**No. 11,395.**   (59 Pac. 648.)

1. RAILROADS—*Injury to Employee—Contributory Negligence.*
A locomotive fireman, whose duty under a rule of the company is
to assist in the management of the engine in conformity to others
of its rules, one of which requires that speed be slackened and
train brought under control in approaching stations, but who
merely fails to remonstrate to the engineer against his violation of
the rule as to speed, cannot be said to be negligent because of
such failure, when he is in no position of authority over the engi-
neer, but when the latter is primarily charged with the duty of
managing the engine, and is fully conscious of what he is doing,
and possesses as full knowledge of the situation and its probable
dangers as the fireman has or can acquire or impart. Nor is it
negligence in the fireman to fail to report to the engineer the ab-
sence of a safety signal, when the latter can and does observe its
absence as well as the former. In the order of casual connec-
tion or natural sequence, the failure of the fireman to remonstrate
to the engineer or to report to him the lack of the signal are not
producing causes of the latter's negligence and of a consequently
occurring accident.

2. ———— *Evidence of Permanent Disability.* When the char-
acter and extent of injuries received by a man in a railroad acci-
dent are described by him and by physicians, and when the effect
of the injuries in disabling him from manual labor are stated by
him, the jury can judge whether and to what extent he will be
permanently disabled, and the testimony of physicians as to the
permanent impairment of his ability to labor is not of necessity
required to enable him to recover for permanent disability.

Error from Labette district court; A. H. SKIDMORE,
judge. Opinion filed January 6, 1900. Affirmed.

*T. N. Sedgwick,* and *A. A. Osgood,* for plaintiff in
error.

*W. D. Atkinson,* for defendant in error.

The opinion of the court was delivered by

DOSTER, C. J. : This was an action by W. T. Fowler against the Missouri, Kansas & Texas Railway Company to recover damages for injuries negligently inflicted on him. He recovered judgment in the court below, to reverse which the railway company has prosecuted error. The plaintiff was a fireman in the employ of the defendant and at the time of the injury was in the performance of his labors on a north-bound freight-train designated as No. 110. This train had the right of way as against south-bound freight-trains. It should have passed a south-bound freight-train designated as No. 109 at a station called Beagle. No. 109 was behind time and therefore did not reach Beagle station as expected. Under this circumstance, and in accordance with the rules of the company, the north-bound train, No. 110, after waiting at Beagle the required time, proceeded on its way. This being the case, the north-bound train, as testified to by the trainmen, might expect to meet the one south-bound at any station north of Beagle, and was, therefore, required to keep a lookout for it. The two trains did meet at Bangor, the first station north of Beagle, and at that point the accident in question occurred. The switch track at Bangor was a short one and was partially occupied by freight-cars standing on it. These cars were pushed by the engine of train No. 109 to the south end of the switch track. This was in the early morning, while it was yet dark. On account of the freight-cars standing in front of the engine of No. 109 its headlight was obscured, and could not be seen from the south by the approaching train, No. 110, and on account of the shortness of the switch track several of the rear cars of No. 109 did not get fully on the

21—61 KAN.

siding but remained out on the main track.   No. 110 ran into these cars, and in the collision with them the plaintiff was thrown from his engine against the end of some iron rails which lay near the track and was thereby injured.

That the accident was caused by the negligence of some one or more of the trainmen of one or both trains there can be no doubt.   The findings of the jury would seem to attribute the accident largely, if not wholly, to one of the brakemen on No. 109 whose duty was to walk out on the track a distance south from where the engine of his train stood and by the display of signal-lanterns give a warning to the approaching train, No. 110.    This he did, but not in sufficient time, or at a sufficient distance down the track, to enable train No. 110 to stop or sufficiently check its speed to avoid the collision.    Some of the jury's findings also indicate that, in view of a rule of the company requiring engineers to slow up and get their trains under control in approaching stations, the engineer of train No. 110 was negligent in approaching the station at too high rate of speed.    The railroad company, however, contends that the plaintiff himself was guilty of a violation of this rule, and also certain others of its rules, and thereby contributed to or, perhaps, wholly brought about the accident.    These rules were :

" 95 (A).   Freight and extra trains are required to approach and pass all water-tanks, coal-chutes, and stations, completely under control.   Speed must be reduced and the engineman and trainmen must commence to get their train ' in hand ' in ample time, so that under no circumstances whatever shall it be possible for it to strike any train, car, or engine which may be occupying the track.   The responsibility for safety rests with the approaching freight or extra train."

"65.  A signal imperfectly displayed, or the absence of a signal at a place where a signal is usually shown, must be regarded as a danger signal, and the fact reported to the trainmaster."

" 4.  Every employee of this company whose duties are in any way prescribed by these rules must always have a copy of them at hand when on duty, and must be conversant with every rule.   He must render all the assistance in his power in carrying them out, and immediately report any infringement of them to his immediate superior officer."

The negligence charged against the fireman consisted in his failure, first, to observe that the switch light at the north end of the side-track was not shining, or could not be seen, and to report the fact to the engineer, and second, his failure to remonstrate to the engineer against the latter's failure to slow up and bring the train under control as they were approaching the station.   The findings, however, specially exonerated the plaintiff from the charge of negligence. As to the failure to observe that the north switch light was not shining, the evidence shows that the engineer and the head brakeman (the latter of whom was sitting in the cab on the fireman's side and in his seat) also saw that the light was not shining, and we do not think it was incumbent on the plaintiff to make report of a fact that was as patent to the others as to himself, especially as the engineer was primarily charged with the duty of observing signals, or the lack of them.   Besides, it was in testimony that these switch lights were frequently out.   One witness testified that they were always out when the wind blew, and another testified that they were out half the time. On the night in question the one at the south end of the switch track was out and was relighted by one of the brakemen of train No. 109 when it stopped and

side-tracked. No one remembered whether the one at the north end of the switch track was burning. The frequency with which these switch lights were out, either from failure to light them or from accidental circumstances, did not, we think, require the train-men to regard their absence as that warning of danger which, under other circumstances, it would have been.

As to whether the plaintiff was guilty of negligence in not protesting against the engineer's failure to bring his engine under control, the evidence showed that the primary duty of the fireman was to keep the engine fire going, and secondarily, when not thus employed, to keep a lookout for signals. He did perform this latter duty for a half mile or more as they were approaching the station, and he saw the south switch light. The color of this light indicated that the track was clear. About that time the engineer commenced "to make steam," and the plaintiff then commenced to prepare coal for the furnace and shovel it in. The reason for making steam and putting in more coal at that time was that a short distance beyond the station was an ascending grade of about four miles, and it was desirable to get up steam and increase speed to enable the train better to climb the grade. The fireman observed that the engineer in approaching the station was not putting his train under control, but he testified that the management of the engine belonged to the engineer and not to himself; that it was not his business to superintend the engineer in the discharge of his duties, and this we know ourselves as a general fact.

The sole negligence charged against the plaintiff, therefore, consisted in his failure to remonstrate to the engineer against the latter's violation of the rule, and this charge of negligence is predicated wholly on

that portion of rule 4, above quoted, which requires
employees to "render all the assistance in their power
in carrying out the rules," and upon that portion of
rule 95 (A) which provides that in approaching sta-
tions "speed must be reduced and the engineman and
trainmen must commence to get their train in hand
in ample time," etc.  We do not think that under the
circumstances of the case the mere failure of the fire-
man to object to the engineer's violation of the rule
justifies the charge of negligence made, and we do not
regard any of the cases cited by counsel for plaintiff
in error as supporting the charge of negligence made
by them.  It does not follow that accidents occurring
contemporaneously with the violation of rules are of
necessity attributable to the violation.  In such cases
coincidence alone is not sufficient.  The violation of
the rule must be the producing cause of the injury or
one of the causes contributing to it.  The law upon
the subject is well stated in a recent and valuable text-
book :

"Generally, if an employee of ordinary intelligence
is injured by reason of his wilful disobedience of writ-
ten or verbal orders, such disobedience being clearly
negligent, he cannot recover for his injury as against
his employer.  So, when it is clear that the violation
of a rule of the employment, known to the plaintiff,
was the proximate cause of his injury, he will, as a
matter of law, be deemed guilty of contributory neg-
ligence.  But the mere fact of the violation of the rule
is not conclusive of negligence, like principles being
applied as in the cases where the party charged with
negligence has been guilty of the violation of a statute
or ordinance.  Thus, one employed by a railroad cor-
poration as a locomotive engineer is not debarred from
recovering damages against the corporation for inju-
ries caused by a defect in the locomotive, by the fact
that he was acting in intentional violation of the rules
of the road, unless the accident was due in whole or

in part to such violation. It is generally a question of fact whether the failure to observe a particular rule was the proximate cause of the injury complained of." (Busw. Pers. Inj., 2d ed., § 153.)

The law of causal connection requires effect to follow cause as a natural sequence in the order of events. This does not, of course, mean that an efficient cause must produce an effect always or necessarily and inevitably, but that it must produce it reasonably, naturally, and probably. This in the law cannot be said of the fireman's failure to remonstrate against the engineer's violation of the rule. So to hold would be to say that the natural, reasonable and probable cause of the engineer's dereliction of duty was the fireman's failure to protest against his conduct. This cannot be true unless it was also true that the fireman's derelictions of duty were moral agencies to which the engineer was subject, and according to which he conformed his conduct, wholly or in part. These moral agencies, if existing, and possessed of the potency ascribed to them, must have been those which in the order of causal connection — that is, in the natural sequence of events — were productive of the engineer's dereliction, and, in consequence, of the resulting accident. Mr. Wharton, in his Law of Negligence, says : "A negligence is the juridical cause of an injury when it consists of such an act or omission on the part of a responsible human being as in ordinary natural sequence immediately results in such injury." ( § 73.) Elsewhere he says : "The negligence, to make it a juridical cause, must be such that by the usual course of events it would result, unless independent disturbing moral agencies intervene, in the particular injury." ( § 324.) Tested by these unquestionably sound propositions of law as well as logic, the position

of counsel for plaintiff in error becomes untenable unless the engineer was under moral compulsion to regulate his conduct according to the caution or remonstrance of the fireman.

Unless the slackening of speed by the engineer would, in natural sequence, have reasonably, naturally and probably followed the fireman's warning, it cannot be said that the failure to give the warning resulted in or contributed to the injury.  Suppose the warning had been given but the engineer had disregarded it;  the assumed preventive cause would have failed of its effect through lack of potency in the law of causal connection to produce the result of safety. Suppose, on the other hand, the engineer, without warning, had slackened speed, after failure in the first instance to do so, and the accident had thereby been averted; the desired effect would have been produced without the agency of the claimed operative cause.  It must be borne in mind that the engineer was as well aware of the situation and of what he was doing as was the fireman.  He was acting from his own initiative and under the control of his own judgment and motives.  Unless his action can be said to be an effect following naturally, reasonably and probably from the failure to receive advice from the fireman, the fireman's failure to give the advice cannot be accounted a producing cause of the injury.

If the position of the fireman had been one of superiority or command, and the engineer his subordinate, the failure to exercise the authority might be regarded as negligence.  So, also, if the fireman had been possessed of information which the engineer did not have, and had failed to impart it, or had been in a better position than the engineer to acquire information and had negligently omitted to acquire it, his

failure to communicate his information in the one instance and his failure to acquire it in the other might have constituted negligence on his part. In these supposititious cases the engineer's delinquency might be said to be the natural, reasonable and probable effect of the fireman's failure in the one case to exercise his authority, and in the other case to acquire and impart his information; but the fireman's failure to acquire or impart information which the engineer already had, or to warn the engineer of consequences which he, as well as the fireman, knew and could take into account, cannot be said, in the law of sequences, to be the impulsion of an operative cause upon a resultant effect.

We are cited by counsel for plaintiff in error to the case of *Wescott v. New York &c. Railroad*, 152 Mass. 465, 25 N. E. 840, as a case most nearly in support of their contention. In that case a railroad conductor, in obedience to the orders of a superior officer, and without protest against it, but in violation of a known rule of the railroad company, took his train out in the face of another approaching train that he had reason to believe he might meet and collide with. He was injured in the collision which occurred. It was held that he could not recover. In that case, however, as between the conductor and the railroad company, the producing cause of the accident was not the wrongful command of the superior nor the conductor's failure to protest against it. It was the wrongful act of the conductor in obeying it. So far as the conductor and the company were concerned, it was the *wrongful running of the train* by the conductor, and not the wrongful order to him to run it, nor his neglect to remonstrate against running it, which resulted in the accident.

It is also claimed that the finding of the jury of

$8200 for permanent injuries was excessive, because permanency of injury was not shown by the evidence. This claim is based upon the assumed fact that no physician testified that the injuries received would be permanent in character in the sense of disabling the plaintiff from following his ordinary vocations, which were alternately farming and firing on locomotives. We think we have correctly characterized the counsel's position as an assumption of fact. It is fairly inferable from the testimony of some of the physicians that they regarded the plaintiff's injuries as permanently disabling him, to a partial extent, from future manual labor. Besides, the extent and character of the injuries received by plaintiff were detailed by him and by physicians, and in some particulars were observable to the jury, and their effect up to the time of the trial to disable him from labor was stated by him. Some of these injuries were frightfully severe in charater, and it needed no expert to testify to the permanent impairment of plaintiff's ability to labor as the result of their occurrence. The injuries received were found by the jury to be as follows:

"Q. If you find the plaintiff is permanently injured, please state how and in what way he is permanently injured. A. By fracture of skull over left eyebrow; by fracture of both nasal bones; by fracture of both upper and lower jaws, being utterly unable to masticate solid food; by fracture of bone over upper jaw; by knocking out of a section of jaw-bone, with five teeth adhering thereto; also nine other teeth; by cut on left side of lip, thereby partially paralyzing same; the right shoulder smashed and bruised to the extent that it is partially paralyzed, and it is, and a perceptible wasting away of the muscles of the shoulder, rendering right shoulder and arm almost entirely useless."

One or two other claims of error in respect to the

matter of damages are made. They are unfounded, however. The verdict of the jury in respect to the specific items and also in its total amount was not excessive. There is no error in the record and the judgment of the court below will be affirmed.