No. 37,237

LESLIE E. RIPPER, *Appellee,* v. THE CITY OF CANTON, *Appellant.*

(199 P. 2d 815)

Opinion filed November 30, 1948.

*J. R. Rhoades* and *George R. Lehmberg,* both of McPherson, were on the briefs for the appellant.

*Archie T. MacDonald* and *Russ B. Anderson,* both of McPherson, were on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action to recover damages for injuries sustained by plaintiff in falling into an uncovered catch basin in a gutter in a street of the city. At the close of the introduction of evidence the plaintiff moved the trial court for a directed verdict for the reason the entire evidence established that the city was guilty of negligence causing plaintiff's injuries, and that the evidence failed to show any contributory negligence on the part of the plaintiff. The trial court sustained the motion and submitted to the jury only the amount of damages. The jury returned a verdict for plaintiff in the amount of $2,040 and the trial court rendered judgment thereon. Defendant's motion for a new trial was denied and the city perfected its appeal to this court, specifying error in various particulars,

which are discussed in its brief under two headings: (1) That the trial court erred in directing a verdict, and (2) that the verdict and judgment thereon was excessive.

Omitting formal parts and detailed allegations, it was alleged in the petition that the city installed and maintained a catch basin in the gutter on the north side of Railroad street and about fifteen feet east of the east side of Main street; that the opening of the catch basin was approximately 16 by 18 inches, and that the gutter was frequently used as a sidewalk; that for a period of twenty-four hours immediately preceding 1:30 o'clock, a. m., of June 25, 1947, the opening of the catch basin was uncovered and unguarded, and that by the exercise of care the city could have known and remedied the condition but negligently allowed the opening to remain uncovered and in a dangerous and unsafe condition for pedestrians and others using the street; that at the time last above-mentioned plaintiff was exercising due care and was walking in the paved gutter in a westerly direction; that at the time it was raining and water was standing and running in the gutter and covering the bottom of the gutter and the opening mentioned was obscured and concealed from plaintiff's view, and plaintiff stepped into the opening, sustaining injuries. Plaintiff charged that the city was negligent in failing to maintain the street, curb and gutter in a proper manner, in permitting the cover for the opening to remain off of the opening and in failing to replace the cover, knowing that it had been removed, in failing to post warning signs, and in failing to inspect places where its employees were working, to determine places of danger and to repair the same. It was also alleged that notice of claim had been served upon the city. The answer of the city pleaded facts as to the location and maintenance of the catch basin, denied the opening was uncovered, and that it had any notice that the cover had been removed or that the opening was uncovered or unprotected at the time plaintiff alleged he met with an accident, and it further denied that plaintiff sustained the injuries alleged at the time and place he alleged he had met with an accident. Defendant also alleged that if plaintiff met with an accident as alleged, then such accident was proximately caused and contributed to by the negligence and want of ordinary care of plaintiff in walking in the gutter, in failing to look where he was walking, in failing to observe the cover to the catch basin leaning against the curb and in failing to be warned that the cover was not in place.

To determine whether the trial court erred in directing a verdict for plaintiff on the question of the city's actionable negligence or the failure of the city's evidence to show plaintiff's contributory negligence, we must review the evidence, but in making that review, it is to be borne in mind that a motion for judgment or for a directed verdict, like a demurrer, concedes everything favorable to the party against whom the ruling is sought. See, *e. g., Smith v. Kagey,* 146 Kan. 563, 567, 73 P. 2d 56; *Mosley v. Unruh,* 150 Kan. 469, syl. ¶ 1, 95 P. 2d 537; and *Picou v. Kansas City Public Service Co.,* 156 Kan. 452, 461, 134 P. 2d 686, and cases cited. Our review of the evidence is made in the light of the above rule and generally is limited to evidence as to the city's liability and plaintiff's contributory negligence. It may be noted first that there is no dispute that Railroad street east of Main street was not paved nor were there any sidewalks on either side of it. On each side there was a concrete curb and gutter. A drain passed under Main street and discharged into the catch basin in question and the water from the basin overflowed and ran eastwardly in the gutter on the north side of Railroad street. It had been raining prior to the time of the accident.

Plaintiff testified that he had lived in the city for many years and was familiar with Main and Railroad streets. The lot at the northeast corner of the intersection was vacant, but to the east was a barn where plaintiff kept a horse. Plaintiff lived in the south part of town and when he came to the barn he had always crossed the vacant lot. On June 24 he bought four bales of straw from a farmer and he told the farmer to pile it by the barn. Plaintiff worked until midnight. It had been raining and looked like it would rain more, and when he quit work he drove in his car north on Main street and turned eastwardly on Railroad street so his headlights were on the barn. He stopped his car and went down the middle of the street and to the barn to cover the straw. It was raining and misting. The street was muddy and in returning he walked down the gutter and through the water running in it so that the water would wash the mud from his shoes in order that he would not dirty his clean car. The lights from his car did not light up the gutter, nor did the street light at the northeast corner of Main and Railroad streets. As he walked along he wasn't looking right at his feet, but ahead of him, and he did not see the puddle of water in the gutter just before he fell; that he stepped into the catch basin with one leg, got out and went home. He knew there was a lid to a

catch basin along the gutter but he did not know where the lid was until the next morning when it was against the curb about four feet west of the hole. He did not see the lid that night. There was no other witness to the accident. Swenson, called by plaintiff, testified that he operated a filling station at the northwest corner of Main and Railroad streets and that city employees were flushing the drain under Main street on June 24 and he went to the east side and the cover of the catch basin was then off but he did not notice where it was placed. Hungerford testified he worked for Swenson and that when he was not busy he had helped the city employees with their hose while they were flushing the drain under Main street. He said the cover to the catch basin was off while they were doing the flushing and he did not see anyone put it back on but he was not on the east side of the street. He stated that traffic east on Railroad street was by automobile, but two or three families walked up the street—where they walked depended on the weather, if it was dry they took the street and if it was muddy they took the gutter. Hedinger testified he was working with the street commissioner and as to the work of cleaning the drain, that he took the cover off and did not remember putting it back or seeing anyone else do so; that the street commissioner directed him to roll up the fire hose they had been using, put it in the truck and take it away and that he did so; that the street commissioner told him he would pick up the tools. He further stated the cover was about twenty-two inches square and weighed about seventy pounds; that after the cover was in place some days it would fill up with mud and trash and had to be pried loose in order to take hold and lift it; that after it had been loosened like it had been this day "you could take hold with one hand and lift it off"; that the cover had been just raised up and tipped over and it was not customary to move it as much as three feet away and lean it up against the curb. Hedinger stated the pedestrian traffic on East Railroad street would not be over one a day and ordinarily he would walk in the middle of the street.

Defendant's evidence showed the following: Vogts, the street commissioner, stated the cleaning of the drain under Main street was done in the forenoon of June 24. Hedinger removed the cover and threw it backwards to the north and over the curbing. He could not say and didn't remember definitely whether or not he had replaced the cover after completing the flushing. He saw the

place the next morning and the cover was approximately three feet west of the catch basin and was not in the same position as when it was removed. The street lights were on the night of June 24 and there was a light approximately twenty-five feet northwest of the catch basin and the light shines on the catch basin. No one reported to him or told him during June 24, or until after the time of the accident, that the cover was not on the catch basin. Loewen stated he operated a lumberyard at the southwest corner of Main and Railroad streets and he recalled that the sewer under Main street was cleaned on June 24. On the afternoon and evening of that day he had occasion to pass along Main street on the east side and pass the catch basin three or four times, and could not recall seeing the cover off or of seeing the cover leaning against the curb three feet to the west of the basin. On cross-examination he said he was not looking to see if the cover was off or on; that he walked right by it and if it had been on the curb he would surely have noticed it and if it had been on the parking he would have noticed it, he could not say definitely that the cover was on and he wouldn't have noticed if it had been hauled away and that he didn't actually look to see if it was on or off.

While there is no doubt under the evidence that the city, through its employees, removed the cover to the catch basin, and that the evidence showing that it was replaced may be characterized as weak, the weight to be placed on it was for the jury. Briefly stated, the evidence showed that when the cover was removed it was turned back to the north and over the curbing. It was shown quite definitely that it was not placed four feet west of the catch basin, where the testimony shows it was located after the alleged accident. Although no witness testified positively that he replaced the cover after the work of clearing the drain had been completed by noon of June 24, the witness Loewen stated he passed the catch basin three or four times and did not see the cover leaning against the curb, and that had it been there he surely would have noticed it.

We need not discuss at length the question of plaintiff's contributory negligence, but the evidence was such that the jury could have found that he walked down the gutter through running water which obscured any hole or defect there may have been in his path. In so proceeding plaintiff must have anticipated any peril there may have been, not the precise one which may have caused his injuries. His own testimony is susceptible of the interpretation that he

walked where he could not see because the bottom of the gutter was covered with water, thus hiding every hole or obstruction there may have been. Not only that, but there was evidence, which if believed, warranted a conclusion that the street light shone on the immediate location of the catch basin and disclosed the cover, assuming it was there where the evidence disclosed it to be on the following morning, and the further conclusion that plaintiff must have seen the cover and known the catch basin was open and uncovered.

In our opinion the evidence was such that the trial court could not say as a matter of law that the city was guilty of actionable negligence or that the plaintiff was not guilty of any negligence which contributed to any injuries he may have sustained.

In view of the above conclusion, it is not necessary that we consider whether the judgment rendered was excessive in amount.

The judgment of the trial court is reversed and the cause remanded for a new trial.