No. 42,484

LESTER ALBIN, *Appellee,* v. OPIE MUNSELL and MORRIS H. WIRE, *Appellants.*

(369 P. 2d 323)

Opinion filed March 3, 1962.

*Kenneth Clark,* of Hill City, argued the cause, and *W. H. Clark* and *Marion W. Chipman,* both of Hill City, were with him on the briefs for the appellants.

*Thomas C. Boone,* of Hays, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, C. J.: This was an action to recover damages for personal injuries sustained by the plaintiff in a collision between two automobiles at the intersection of two public highways in Gove County, Kansas. The plaintiff recovered and the defendants appeal from the adverse judgment and divers other rulings and orders of the trial court to be presently mentioned and discussed.

The pleadings can be briefly summarized. All that need be said with respect to them is that the petition charges the proximate cause of the injuries sustained by the plaintiff, Albin, in the collision at the highway intersection was the negligence of defendant Wire, a minor fifteen years of age, in driving a motor vehicle, which was owned by defendant Munsell and operated by Wire with Munsell's consent and approval, upon the highway and into the intersection; that the answer states such injuries resulted from plaintiff's contributory negligence, describing it; and that the reply denies the allegations of the answer.

With issues joined as above stated the cause came on for trial by a jury. The plaintiff adduced his evidence and rested. Thereupon the defendants demurred to plaintiff's evidence on the sole ground it failed to prove a cause of action against the defendants, or either of them. This demurrer was overruled. Thereupon defendants presented their evidence, renewed their demurrer to plaintiff's evidence and then moved for a directed verdict. After these objections were overruled instructions and special questions were given to the jury which ultimately returned a general verdict for the plaintiff in the amount of $10,607.00 along with its answers to special questions. After approving the verdict and the answers to special questions the trial court rendered judgment thereon.

Thereafter, their motions to set aside the answers to special questions and for a new trial having been denied, defendants perfected this appeal.

In relating the evidence and discussing the issues we shall refer to the parties in this opinion as they appeared in the court below.

The general factual picture disclosed by the undisputed evidence can be related as follows:

Immediately south of the City of Quinter, Kansas, there is an intersection of two graveled public roads. The east and west highway, a township road, is about twenty-three feet wide and the north and south highway, a county road known as the Castle Rock Road, is about twenty-five feet wide. There are no obstructions to view at the intersection from any direction. Traffic traveling on the east and west highway is controlled by stop signs. The stop sign controlling westbound traffic is located on the right shoulder of the township road, approximately sixty-three feet from the east line of the Castle Rock Road; the stop sign controlling eastbound traffic is located on the right shoulder of the township road, approximately sixty-one feet from the west line of the Castle Rock Road.

On November 8, 1959, the weather was clear and both highways were dry. At about 7:00 p. m. on such day Albin was driving west on the east and west highway in his 1950 Nash automobile. Upon nearing the intersection with Castle Rock Road he stopped at the stop sign prior to entering it with the intention of making a left turn to the south on Castle Rock Road. At or about the same time Wire, age fifteen, who was driving a 1953 Mercury automobile belonging to Munsell with the latter's consent and approval, drove eastbound into the intersection, at a high rate of speed, after disregarding and ignoring the stop sign for eastbound traffic. A collision, in which Albin was seriously injured, ensued and this lawsuit followed.

In approaching questions involved in this appeal the issues will be simplified by stating at the outset that in the face of the record presented we need give little, if any, attention to the evidence relating to the negligence of Wire or to Munsell's liability therefor. It may be said, that standing alone, plaintiff's evidence was sufficient to establish those matters as against a demurrer. However, in order that there may be no question on those points it should perhaps be stated that, while testifying as a witness in his own behalf, Wire established his own negligence was a proximate cause of the collision by admitting that he drove into the intersection, under the

conditions and circumstances heretofore related and by failing to deny the testimony of one of plaintiff's witnesses, a deputy sheriff— who testified that while he was investigating the accident, soon after the collision, he inquired of Wire as to what had happened, to which inquiry the latter replied "It is all my fault," and then went on to explain that he did not stop for the stop sign because he thought he was a mile farther west, and that he was traveling between sixty and sixty-five miles per hour. And Munsell established that he was jointly and severally liable with Wire for any damages caused by the latter's negligence, under and by virtue of the provisions of G. S. 1949, 8-222, when he admitted, while testifying as a defense witness, that such minor had his permission to take and use the automobile he was driving at the time of the collision. From the foregoing it appears that under the uncontroverted evidence the only defense available to defendants in the case, as to the cause of the accident, was that Albin had been guilty of contributory negligence which was a proximate cause of the collision.

The first claims of error advanced by defendants are that the trial court erred in overruling (1) their demurrer to plaintiff's evidence and (2) their motion for a directed verdict. These two claims can be considered together.

Under our decisions there is ordinarily no material difference between a ruling on a demurrer to the sufficiency of evidence and a directed verdict. (*Eckl v. Brennan,* 150 Kan. 502, 506, 95 P. 2d 535; *Bradley v. Allis Hotel Co.,* 153 Kan. 166, 176, 109 P. 2d 165; Hatcher's Kansas Digest [Rev. Ed.], Trial § 134; West's Kansas Digest, Trial § 168.) Moreover, as in the case of a demurrer, evidence against which a defendant directs a motion for a directed verdict must be construed in the light most favorable to the plaintiff and against the defendant. (*Rule v. Cheeseman, Executrix,* 181 Kan. 957, 317 P. 2d 472; *Bishop v. Huffman,* 177 Kan. 256, 278 P. 2d 588; *Mathis v. Public School District No. 103,* 175 Kan. 453, 264 P. 2d 1082; *Ripper v. City of Canton,* 166 Kan. 185, 187, 199 P. 2d 815; Hatcher's Kansas Digest [Rev. Ed.] [1961 Cumulative Supp.], Trial § 142; West's Kansas Digest, Trial § 178.)

Conceding, with commendable candor, that Wire was guilty of negligence, the gist of all contentions advanced by defendants on the points now under consideration is that the evidence shows plaintiff was guilty of contributory negligence which precludes his recovery, hence their demurrer to the evidence and motion for a directed verdict should have been sustained.

That the established rule of this jurisdiction is that a plaintiff's contributory negligence will bar him from recovery in an action for damages sustained in an automobile casualty and that a demurrer to his evidence, or a motion for a directed verdict, should be sustained where his contributory negligence clearly appears from his evidence cannot be questioned. (*Moler v. Cox*, 158 Kan. 589, 149 P. 2d 611; *Dolloff v. City of Wichita*, 147 Kan. 63, 75 P. 2d 211; *Houdashelt v. State Highway Comm.*, 137 Kan. 485, 21 P. 2d 343; *Crowder v. Williams*, 116 Kan. 241, 226 Pac. 744; *Hanabery v. Erhardt*, 110 Kan. 715, 205 Pac. 352.)

On the other hand the rule is equally well-established that, when the facts relating to contributory negligence are such that men of reasonable minds might reach different conclusions, the question is for the trier of the fact, otherwise it is one of law. (*Keir v. Trager*, 134 Kan. 505, 7 P. 2d 49; *Sponable v. Thomas*, 139 Kan. 710, 33 P. 2d 721; *Jones v. McCullough*, 148 Kan. 561, 83 P. 2d 669; *Cruse v. Dole*, 155 Kan. 292, 295, 124 P. 2d 470.)

Thus, mindful that it must be construed in the light of the rules to which we have heretofore referred, we turn to the particular evidence on which the rulings on the matters now under consideration must stand or fall. This evidence, we may add, except for one bit of testimony to the effect the front end of each automobile involved was pushed in as a result of the collision, came from the lips of the plaintiff himself and one Victor Stecklein, a deputy sheriff, who testified as a witness in plaintiff's behalf.

Limited to the particular evidence, to which we have previously referred, and without reference to his testimony regarding the general factual picture heretofore outlined, plaintiff testified in substance as follows. That he was completely familiar with the intersection of the two roads; that as he approached the intersection from the east he stopped at the stop sign for westbound traffic; that he did not observe anything out of the ordinary while he was stopped; that it was completely dark; that as he started up he signaled his intention to make a left turn; that as he approached closer to the intersection he was standing or moving in the north lane of traffic of the east and west township road; that before entering the intersection he signified his intention to turn to the left; that at the time he came to the stop sign and stopped he did not observe anything out of the ordinary about the traffic on the highway or about the roadway; that at the time he completed turning on his signal lights he looked up and saw the other car coming from

the west; that when he saw the lights coming there was kind of a little dip just west of this corner (intersection); that when Wire's automobile came out of this dip, and just west of the intersection, he realized the oncoming car was going so fast its driver could not stop at the west intersection stop sign; that, at that time, the Wire car was just west of the intersection on the township road, that plaintiff had not gone into a left hand turn, and the next thing he knew there was just a crash and he could not recall anything that happened thereafter. In addition plaintiff testified that, with regard to the time of the crash, he could not tell whether his car was moving or stopped; that as the Wire car approached the intersection from the west he had no reason to believe it would not stop at the stop sign; that when he first realized that car was not going to stop at the stop sign the accident happened in just a second; and that he did not have time to turn his car either left or right to get out of the way.

The witness Stecklein, after stating he was acquainted with all the parties and had been called to investigate the accident in question and had reached the scene approximately ten minutes after it occurred, testified in substance that when he arrived he found the Wire car east of the intersection on the south side of the township road fifty feet east from the point of impact; that the Albin car was east of the intersection on the north side of the township road fifty-four feet from the point of impact; that from an examination of the two cars he found that there was damage to the left two-thirds of the front of the Wire car and that the Albin automobile was damaged in the same place (*i. e.*, the left two-thirds of the front thereof); that he determined the point of impact by the tire marks left in the gravel by the vehicles in question, particularly the Wire car which laid down skid marks of ninety feet, which were six feet from the south side of the road, to the point of impact; and that in his opinion the point of impact between the two vehicles was eight feet west and four feet north of the southeast corner of the intersection, which would indicate that, at the point where the accident occurred, there was nineteen feet of roadway to the north and four feet to the south approximately, and further indicate that perhaps the plaintiff was in the process of making a left turn. Sometime during the examination of this witness he was shown a sketch or diagram outlining the scene of the collision, conceded to have been prepared by counsel for defendants. When cross-examined in connection with this sketch he admitted that

according to his measurements plaintiff had not proceeded to the center line of the intersection before turning to the left and that it appeared he had cut the corner. However, on redirect examination, he testified he had never been able to determine the exact route of plaintiff's car and in substance admitted that the "swooping or sloppy" left turn shown on the diagram, (which had been admitted in evidence as defendants' Exhibit "1") might, or might not, be correct. This witness also testified that in his opinion plaintiff was driving five miles per hour at the time of the collision.

We do not deem it necessary to burden our reports with a detailed review or discussion of the numerous cases cited by appellants' astute and diligent counsel in support of their position the rulings now in question were erroneous, for, as has been repeatedly pointed out in our decisions (see, e. g., *Nolan v. Hebrew,* 177 Kan. 363, 365, 278 P. 2d 1011; *Siegrist v. Wheeler,* 175 Kan. 11, 16, 259 P. 2d 223; *Sullivan, Administrator v. Davidson,* 183 Kan. 713, 718, 332 P. 2d 507), it must be remembered that every negligence action depends upon the factual situation disclosed by the record on which it is decided, and that other decisions are of little value as legal precedents unless, as rarely occurs, the governing facts and circumstances are similar. All that need be said as to such decisions is to state, that after carefully reviewing them, we find no case among those cited, so similar from the standpoint of facts and circumstances involved, that it can be regarded as a controlling precedent.

Nor is it necessary that we further labor the evidence of record. It suffices to say that, in our opinion, the evidence already related, when surveyed in its entirety, discloses conditions and circumstances, particularly those relating to limitations of time involved and a confronting nighttime emergency, which could well cause reasonable minds to differ as to whether appellee's conduct, after he was first able to observe Wire was not going to stop at the stop sign, was of such character as to constitute contributory negligence which was a proximate cause of the collision. Therefore, following decisions to which we have heretofore referred, it necessarily follows that question was for decision by the trier of fact and the trial court did not err in overruling appellants' demurrer to appellee's evidence, or in making the same ruling when such motion was renewed at the close of all the evidence, or in denying the appellants' motion for a directed verdict. The rule is well-established that an operator of a motor vehicle, otherwise obeying the law,

who is confronted with a sudden emergency and who, because of want of time in which to form a judgment, acts according to his best judgment but omits to act in a most judicious manner, is not guilty of negligence. (See, e. g., *Winfough v. Tri-State Insurance Co.*, 179 Kan. 525 [Syl. ¶ 3], 297 P. 2d 159.)

Appellants next complain of Instruction No. 15, as given by the trial court, which reads:

"If you find that the plaintiff should recover damages from the defendants, or either of them, you shall fix such damages from the evidence introduced in an amount which will fully compensate the plaintiff for the damages sustained, and *it is not necessary that any witness should have testified in this case expressing an opinion as to the amount of such damages, for that is a matter you alone can decide.* In determining such amount you may consider from the evidence the plaintiff's age, occupation, health and physical condition immediately before the injury as compared with his present condition, insofar as his present condition is the natural and proximate result of such injuries; and you may also consider the following, if they appear from the evidence, as they relate to and result from such injuries:

"Plaintiff's age;

"Plaintiff's medical and hospital expenses to date, *and such prospective future medical expenses as plaintiff may reasonably be expected to incur;*

"*Plaintiff's mental anguish resulting from mutilation or disfigurement;*

"*Plaintiff's permanent disability or loss of future earning capacity.*" (Emphasis supplied.)

For purposes of identification, and to avoid repetition, we have underlined the language of the foregoing instruction which is claimed by appellants to make such instruction erroneous.

Directing our attention to the portion of the instruction, first above emphasized, appellants lift the language thereof out of context and then insist such instruction turned the jury loose to do anything it wanted to do in reaching a decision as to the amount of damages, if any, it would allow in the case. We cannot agree. In this jurisdiction the kind of proof required to establish the essential elements of damage involved in a tort action may be different but when the evidence with respect thereto is all in and it affords data, facts, and circumstances reasonably certain from which liability, and actual loss can be determined, it is the jury's province to determine the amount of damages sustained on the basis of such evidence. This, we may add, is so even though no witness has testified in the case expressing an opinion as to the amount of such damages. When the language complained of by appellants is left in context and read in connection with its other provisions we think the entire instruction meets the essential requirements of the rule

just mentioned, hence it cannot be successfully argued the trial court's action in giving it should be construed as reversible error. This conclusion, it may be added, finds support in *Moore v. Wichita Yellow Cab Co.*, 136 Kan. 99, 12 P. 2d 736, at page 103, where a like conclusion was reached with respect to almost identical language in an instruction of similar import.

Turning again to Instruction No. 15 appellants point to the last three paragraphs, above emphasized, of such instruction and insist that the three specific items therein mentioned should not have been included in the instruction because there was no evidence from which the jury could reasonably draw any conclusion as to the amounts to be allowed appellee for prospective future medical expenses; for mental anguish resulting from mutilation or disfigurement; and for permanent disability or loss of future earning capacity resulting from his injuries. We are not disposed to burden this opinion with the pertinent evidence of record or labor the contentions advanced by appellants as to its sufficiency. It suffices to say that, after reviewing the entire record and giving consideration to all contentions advanced, we have no difficulty in concluding the evidence in this case clearly warrants the trial court's action in giving the portions of the instruction now in question, and that contentions advanced by them to the contrary are devoid of merit and cannot be upheld. The fact that the damages disclosed by the evidence cannot be calculated with absolute mathematical or financial exactness does not render them so uncertain as to preclude their assessment. (See, e. g., *Domann v. Pence*, 183 Kan. 135, 141, 325 P. 2d 321; *Avery v. City of Lyons*, 183 Kan. 611, 621, 331 P. 2d 906; *Rupp v. Norton Coca-Cola Bottling Co.*, 187 Kan. 390, 392, 393, 357 P. 2d 802; *Connell v. Norton Coca-Cola Bottling Co.*, 187 Kan. 393, 397, 357 P. 2d 804; *Baisdrenghien v. Railway Co.*, 91 Kan. 730, 139 Pac. 428; *Railway Co. v. Fowler*, 61 Kan. 320, 329, 59 Pac. 648.)

Appellants next complain because the trial court refused to give most of the special questions prepared and asked by them and instead prepared and gave some of its own. The gist of all arguments advanced on this point is that under the provisions of G. S. 1949, 60-2918, appellants were entitled to request ten questions and the court was required to give them. Conceding appellants had a right to request submission of their requested questions it does not follow the trial court was required to give them, particularly in the

form requested. This court long ago established the rules governing the contentions raised by appellants in connection with the matter now under consideration. See *Doty v. Crystal Ice & Fuel Co.,* 122 Kan. 653, 253 Pac. 611, where it is held:

"The trial court has discretionary supervision of the form and nature of special questions which may be submitted to a jury, and may properly refuse to submit questions which are highly technical, or which are not focused on the ultimate facts of the matter in issue, or which are designed merely to recapitulate the evidence rather than to determine the facts proven by the evidence." (Syl. ¶ 1.)

See, also, *Sluss v. Brown-Crummer Inv. Co.,* 143 Kan. 14, 53 P. 2d 900, which holds:

"The trial court has a wide discretion as to the special questions to be submitted to the jury, and where it appears that a question is not intended to bring out some ultimate fact in the case it is proper to refuse to submit it." (Syl. ¶ 5.)

And in more recent decisions the court has consistently adhered to the rules announced in the foregoing decisions. See *Reda v. Lowe,* 185 Kan. 306, 314, 342 P. 2d 172; *Kurdziel v. Van Es,* 180 Kan. 627, 633, 306 P. 2d 159; *Finke v. Lemle,* 173 Kan. 792, 797, 798, 252 P. 2d 869; *Alexander v. Wehkamp,* 171 Kan. 285, 291, 232 P. 2d 440.

In the instant case the trial court in refusing to submit the questions requested—because of their form—pointed out that in this state, where special questions are requested, the requirement is that the court submit them on issues of ultimate fact in the case and that they are not designed to conduct a cross-examination of the jury. It then submitted questions of its own which an examination of the record discloses were limited to ultimate facts on the controverted issues. Under such circumstances it may be stated, without burdening our reports with questions requested or those submitted, that the trial court's action with respect to those matters did not result in such an abuse of its discretionary powers as to constitute reversible error.

Appellants concede their claims of error in the overruling of their motion for a new trial are predicated on error in the rulings heretofore considered, discussed and determined, hence contentions advanced with respect thereto require no further attention. Moreover, what has been previously stated and held fully demonstrates their final contentions, that the trial court erred in approving the verdict and answers to special questions because they were not

supported by evidence and are contrary to the evidence, lack merit and cannot be upheld.

The judgment is affirmed.