No. 44,354

G. W. Baker, d/b/a G. W. Baker Construction Company, *Appellee,* v. The Western Casualty and Surety Company, a Corporation, and Bowen Construction Company, a Corporation, *Appellants.*

(411 P. 2d 711)

Opinion filed March 5, 1966.

*Blake A. Williamson,* of Kansas City, argued the cause, and *Harry E. Crosswhite,* of Holton, and *Charles W. Medley,* of Kansas City, Missouri, were with him on the briefs for the appellants.

*William Hergenreter,* of Topeka, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

Hatcher, C.: This is an appeal from a judgment in an action for damages for the alleged breach of a contract.

There is no substantial dispute as to the basic facts.

Inasmuch as the Bowen Construction Company is the principal party and the Western Casualty Company is an insurer raising no separate issues, it will save confusion if we treat the Bowen Construction Company as the only defendant and appellant in identifying the parties.

In the early summer of 1961, plaintiff had been an unsuccessful bidder on a state highway prime contract and contacted the Bowen

Construction Company, the successful bidder, in reference to the possibility of obtaining a subcontract to supply the necessary BC-1 aggregate. After some negotiation a subcontract was entered into between plaintiff and defendant, the Bowen Construction Company. Under the principal provisions of this contract Baker was to supply all of the necessary ingredients for the BC-1 aggregate. He was to make delivery at the rate of 1,000 tons per day and was to be paid $1.30 per ton on the 10th of each month for all materials delivered in the preceding month on quantities to be determined by state highway commission weights.

In case the plaintiff defaulted and refused to correct the default, defendant was given the right to complete the contract. In case the cost of completing the contract was less than the contract price the plaintiff was to receive the difference and if the cost were higher plaintiff was to pay defendant the difference.

Sometime in July, plaintiff commenced delivering rock to the hot mix plant site in preparation for the work. He brought in approximately 5,000 or 6,000 tons of rock. This rock was rejected by the engineer for the State Highway Commission as being unsatisfactory for BC-1 aggregate. Plaintiff was so notified on July 17th, and requested to remove the rock from the highway right-of-way. Plaintiff failed to do so and defendant moved the rock to one side with a bulldozer in order to set up the hot mix plant. Defendant set up the hot mix plant on the rock that could not be successfully dozed to one side.

On July 24, prior to commencement of the production of asphalt, at a meeting attended by plaintiff, defendant's representative and the highway engineer, it was agreed to try to produce BC-1 by using a mixture of 30% rock, 15% lime and 55% sand and gravel. The highway engineer set the gates on the hot mix plant and determined how much of each type of material was fed into the machine. The contractor cannot change these settings without the state's approval. Production of asphalt was commenced on July 28th, and continued on July 29th, with this mixture. During these two days plaintiff furnished the sand, gravel, rock and lime. The highway engineer then condemned the lime and the rock that was being used as not meeting state specifications. Plaintiff was notified of this fact.

On August 9th, another meeting was held between plaintiff, defendant's representatives and the highway engineer, and it was decided to try a mixture of 60% sand and gravel, 20% rock and 20%

lime from a different quarry. Production was commenced in August with production on each of the following dates: August 1, 7, 8, 10, 12, 14, 15, 16, 18, 19, 21 and 31. During August there were 5,925.113 tons of BC-1 aggregate used making a total production up to September 1st, of 6,323,421 tons.

Plaintiff did not furnish any of the lime used on the project during August. He commenced hauling silt to the project on August 11th, and it was available after that date. The highway engineer, Moret, testified that it was his decision to use lime rather than silt for several days after silt was available because he knew the lime was producing a satisfactory mix and he didn't know if a satisfactory mix could be obtained with the silt. If there was a change from lime to silt there would have to be a recalibration of the plant which would result in shutdown time. Difficulty had been encountered in finding a satisfactory mix. It cost the contractor approximately $40 to $50 per hour to shut the hot mix plant down as seven men are required to operate it. In addition there are 13 men on the road crew who cannot work if asphalt is not being produced. On September 7th, it was decided to switch from Valley Falls lime and rock to Oxendale rock and silt. This mixture was first used on September 8th.

Plaintiff continued delivering material until October 6, 1961. However, defendant had been required to furnish some lime.

On October 6th, plaintiff informed defendant that he would not haul any more material "until we get this thing settled and that money like you promised." On October 7th, plaintiff told the highway engineer he was not hauling any more material until he got paid for that which he had already hauled and some different arrangement was made concerning the percentage of rock that was being used.

Plaintiff testified that he quit the job on October 6th, because defendant owed him $812.50 and that he was not going to furnish any more material unless defendant came up with some money.

After plaintiff quit on October 6th, defendant had to purchase some of the BC-1 materials from other sources and brought in bulldozers, high loaders, crusher, etc., to produce other BC-1 material.

On June 9th, 1964, plaintiff filed this action against the defendant in which he claimed $29,120.36 for material furnished and $8,640.60 for loss of profits on material not delivered under the contract. The defendant answered and also filed a counter claim and setoff in the amount of $22,487.75 being the difference between the contract price

with plaintiff and the cost of the additional material to defendant.

The case was tried to a jury which returned a verdict of $23,895.12 in favor of the plaintiff.

Defendant has appealed.

The appellant first complains of the failure of the court to direct a verdict for the reason the evidence shows as a matter of law that the defendant did not breach the contract when it withheld $812.50 from the August 21st, estimate as it was justified in so doing.

A determination of the question requires more detailed facts. On August 21st, the appellant mailed a pay estimate to appellee which read in part as follows:

| "Item No. Item Description | Original Contract Quantities | Completed Quantity To Date | Unit | Unit Price | Amount Earned To Date |
|---|---|---|---|---|---|
| Aggregate for Bit. Const. | | 6250 | ton | 1.30 | 8125.00 |
| | | Total Earned To Date | | | 8125.00 |
| | | Less Retained 10% | | | 812.50 |
| | | Total | | | 7312.50 |
| | | Less-Previous Payments | | | none |
| | | Amount Due This Estimate | | | 7312.50" |

The estimated amount due was not paid until sometime in September.

The plaintiff complained about the ten percent retained from time to time and on October 6, 1961, wrote a letter to the defendant stating:

"This is to confirm our telephone conversation as of noon Friday October 6, 1961, whereby, I informed you that until we arrive at a suitable understanding, this is the last day I will furnish and haul aggregate for BC1, Kansas State Highway specification under our former agreement, as you have repeatedly failed to comply with the terms as agreed."

The telephone conversation mentioned in the letter was a further complaint about the withholding of the ten percent of the amount due.

On October 7, 1961, defendant sent a letter to plaintiff which stated in part:

"Be advised that your refusal to perform your contract with us, leaves us no alternative but to declare you in default and proceed to obtain the required material elsewhere.

"We will look to you for any amount in excess of the price stated in your contract which we have to pay."

There was a provision in the contract against any withholding which reads:

"Bowen agrees to pay Baker in the same manner as the Kansas Highway Commission pays Bowen, with the exception that all materals [sic] furnished shall be paid for by the 10th of the following month and that no percentage will be withheld until Bowen receives his final payment from the Kansas State Highway Commission."

Appellant now uses one of appellee's exhibits, which consisted of the State Highway Commission's daily report of the individual aggregate used, and purports to show that appellee was actually overpaid on the August 21st, estimate because of lime furnished by appellant, and that the overpayment in the amount of $595.52 continued to October 6, because payment for the material furnished in September was not due until October 10.

The appellee suggests that appellant's calculation is an afterthought, stating:

"For the first time on appeal to this court defendants, by use of figures taken from plaintiff's Exhibit 8, attempt to establish that on October 6, 1961 defendants had actually overpaid plaintiff $595.52, and that, therefore, plaintiff's evidence established as a matter of law that Bowen on October 6, 1961 had not breached his contract with plaintiff; . . ."

Appellee also challenges appellant's calculation. It is stated in the exhibit that it shows only the material used. Appellee lists other items for which appellant owed appellee—blade work at hot mix plant site $145.00; asphalt sold by appellant 29 tons; material wasted by appellant 245 tons, and crushed rock used around plant site 250 tons.

It cannot be said that there was no dispute of facts on the issue.

Where the evidence is such that reasonable minds might reach different conclusions therefrom, a motion for a directed verdict should be overruled. (*Lackey v. Price*, 190 Kan. 648, 378 P. 2d 19; *Johnston v. Gann*, 193 Kan. 102, 391 P. 2d 1016.) On a motion of a defendant for a directed verdict the evidence must be construed most favorably to plaintiff. (*Rule v. Cheeseman, Executrix*, 181 Kan. 957, 317 P. 2d 472; *Albin v. Munsell*, 189 Kan. 304, 369 P. 2d 323.)

It might also be suggested that the appellant did intend to withhold the ten percent and so informed appellee. No claim was made for back charges against appellee until October 13, 1961. The record narrates the testimony of appellant's bookkeeper, Mr. Erickson, on the issue as follows:

". . . Before August 10, 1961, Baker was not back charged for lime purchased by Bowen and Erickson was told to make this back charge on

October 13, 1961. Erickson made out Baker's check of September 18, 1961 and withheld 10% because this was standard procedure. He was not aware of the fact that the contract between Baker and Bowen was not a standard contract and had not been informed that the contract between Bowen and Baker contained different conditions for payment. Had Erickson known of the terms of the contract, he would have paid Baker the full amount due him and would not have withheld 10%. Prior to September 18, 1961, Erickson had not informed Baker of any back charge which Bowen was claiming and could not say that anyone else in the company had so informed Baker. Erickson learned of the back charges to Baker on October 13, 1961."

Appellant further contends that it was error on the part of the trial court to instruct the jury that plaintiff could recover for material wasted because there was no evidence to support such contention.

The court instructed the jury as follows:

"In this connection you are further instructed that you may allow plaintiff Baker further damages for amounts of material which you may find, from a preponderance of the evidence, to have been negligently wasted by defendant Bowen."

It can hardly be argued that there was not evidence to support a finding of waste.

Appellee's exhibit 10, received in evidence, was a letter from the resident engineer of the highway department addressed to the appellee. The letter listed wasted material and material sold to others by days totaling 590,818 pounds; of this amount 63,430 pounds was sold to others leaving wasted material in the amount of 527,388 pounds. It should also be noted that appellee's exhibit 13, which itemized the material furnished, listed 260.28 tons wasted at $1.30 per ton.

The court in its instruction used the term "negligently wasted."

The appellant contends that there was no specific proof of any negligence.

We are inclined to the opinion that the word "waste" as a verb, or the term "wasted material," imputes negligence when used to describe material furnished but not utilized because it is wasted. Material is not wasted if it is refuse or unfit for use. If it is fit for use but wasted some act of omission or commission resulting from lack of ordinary care is implied. The same elements which result in "negligence" would result in "wasted material," *i. e.*, an act or omission at variance with the conduct of ordinarily prudent persons under the circumstances (*Mills v. State Automobile Insurance Association*, 183 Kan. 268, 326 P. 2d 254); absence of due care under the

circumstances (*Shufelberger v. Worden,* 189 Kan. 379, 369 P. 2d 382), and absence of precautions which would be exercised by an ordinary man (*Stevenson v. City of Kansas City,* 187 Kan. 705, 360 P. 2d 1).

Webster's New Twentieth Century Dictionary, Second Edition, defines the verb "waste" and its past tense "wasted" as:

"4. to use up or spend without need, profit or proper return; to squander."

We are forced to the conclusion that the instruction which added the word "negligently" to the word "wasted" did not change the nature of the proof as to what constituted "wasted material." The instruction could not have prejudiced the rights of appellant.

Other objections which appellant makes to the instructions, although not specifically discussed, have not been ignored. The instructions when considered as a whole sufficiently cover the issues on which the case was tried. It would serve no useful purpose to extend this opinion by a lengthy presentation of the instructions in answer to the objections made.

Last, the appellant complains of misconduct on the part of the jury. The complaint covers two different occasions.

During the second day of the trial on January 19, plaintiff was observed carrying on a conversation with one of the jurors. The matter was called to the court's attention and plaintiff was interrogated concerning the incident. Plaintiff's testimony was to the effect that the conversation related to the sale of a farm and was not connected with this lawsuit. Numerous other persons were present at the coffee stand where the conversation took place. The occasion was made possible because of lack of facilities for the jury in the court house.

The second allegation of misconduct concerns another of the jurors. The jury retired to begin deliberations at approximately 2:15 o'clock on January 20, 1965. At approximately 5:15 in the evening of that day the jury was allowed to separate for the night and told to report for duty again at 9:00 o'clock on the morning of the 21st. On the morning of the 21st of January, 1965, the appellee informed his attorney that a juror had told an acquaintance of the appellee that it looked like the appellee was going to get some money. This acquaintance then called the appellee and relayed the information given him. After learning of this fact, the appellee's attorney went into the judge's chambers with the appellant's attorney and told the judge of the conversation between the juror and the third person.

No record was made of this consultation between the judge and the attorneys and no objection was raised by the appellant's attorney concerning misconduct on the part of the juror.

The appellant has never seriously contended that the verdict was in anyway affected by the alleged misconduct. This court has repeatedly held that before a new trial will be granted for a jury's misconduct substantial rights must have been prejudiced. Some of the more recent cases in which the rule was announced are *Thomas, Administrator v. Kansas Power & Light Co.,* 185 Kan. 6, 340 P. 2d 379 and *Barajas v. Sonders,* 193 Kan. 273, 392 P. 2d 849.

A careful examination of the record discloses no trial errors which would justify the granting of a new trial.

The judgment is affirmed.

APPROVED BY THE COURT.

KAUL, J., not participating.